## WILSON v. KEELS.

1. RECEIVER—COMITY OF COURTS.—A FOREIGN RECEIVER of a foreign insolvent will be assisted by our Courts in collecting assets of his insolvent in this State for general distribution, unless it appear that it would conflict with the policy of our laws or infringe the rights of resident creditors.

2. IBID.—FOREIGN RECEIVER—ESTOPPEL.—A resident creditor of this

35—54

State who has voluntarily submitted himself to the jurisdiction of a foreign Court by proving his claim in such Court against a foreign insolvent, and accepting dividends from its receiver, is estopped from objecting that such foreign receiver obtain possession of assets of such insolvent in this State for general distribution.

3. FOREIGN CORPORATIONS—FOREIGN CREDITOR—DEBTOR AND CREDITOR.—21 STAT., 409, does not give resident creditors of foreign corporations exclusive right to assets here as against foreign creditors.

Before GARY, J., Sumter, April, 1898.    Affirmed.

Action for appointment of receiver for assets in this State of Bank of New Hanover, by Thomas Wilson for himself and other creditors, against Mary Keels, Bank of New Hanover, Junius Davis, receiver of said bank, and William H. Ingram, master of Sumter County.    The Circuit decree is as follows:

This action is a creditor's bill, brought by the plaintiff in behalf of himself and all other creditors of the Bank of New Hanover, residing in the State of South Carolina.    The action comes on for trial before me, upon the pleadings in the cause, and an exemplified copy of the record in a cause in the Superior Court of North Carolina, in the case of S. McD. Tate, State Treasurer, *et al*, plaintiffs, against the Bank of New Hanover, Junius Davis, receiver, *et al.*, defendants.    There is no substantial issue as to any matter of fact in the controversy.    It appears that the Bank of New Hanover was a corporation created under the laws of North Carolina, with its principal place of business at Wilmington, in said State.    The bank became insolvent, and made an assignment for the benefit of its creditors.    At the time of such insolvency the plaintiff, Wilson, was a resident of South Carolina, and a depositor in said bank.    On the 19th day of June, 1893, the deed of assignment just mentioned was set aside by the Superior Court of North Carolina in the case of Holmes & Watters, who filed a creditor's bill, in behalf of themselves and all other creditors who might come in and make themselves parties to the action against the Bank of New Hanover, and the said Junius Davis, upon the

ground that the said assignment was in contravention of the laws of North Carolina. In this same proceeding and at the same time the said Junius Davis was appointed the receiver of the insolvent Bank of New Hanover, with full power and direction to take possession of all and singular the real and personalty property, chattels, bonds, stocks, choses in action, evidences of debt, securities, and in fact all of the effects of said bank. It appears that among the assets of said bank was a bond executed by Mrs. Keels to said bank, and secured by a mortgage of certain real estate, situated in the County of Sumter, this State. As such receiver, the said Junius Davis brought an action upon the bond and mortgage executed by Mrs. Keels to said bank in the County of Sumter, and obtained a decree of foreclosure and sale against the said Mary E. Keels, in favor of the said Junius Davis, as receiver of the said Bank of New Hanover. This decree of foreclosure and sale was granted by Judge Benet on the 10th day of February, 1897. Before a sale was had under the foreclosure proceedings had before Judge Benet, the plaintiff herein brought this suit as stated above, in behalf of himself and other creditors of the insolvent bank who reside in this State, the main object of which is to have the proceeds arising from the Keels bond and mortgage, and other property of said bank in this State, applied to the payment of the debts of the creditors of said insolvent bank who reside in this State. The real issues in the case may be summed up as follows:

The plaintiff's contention is: 1st. That the property of a foreign corporation within this State is applicable first to the payment of debts of residents of this State who are creditors of such foreign corporation. 2d. That a receiver appointed by a foreign jurisdiction, has no extra territorial power of official action, and 3d. That the receiver of a foreign corporation, appointed by a foreign Court, is only entitled to property of such insolvent corporation situated within the State under the doctrine of comity, and then only when creditors who are resident of this State are not injured thereby.

The defendant contends: That the plaintiff, Thomas Wil-

son, went in person into the State of North Carolina, prior to the commencement of this action, established his claim in the cause then pending in North Carolina, and participated in the proceeds arising in said cause, by receiving his *pro rata* of said funds; he thereby became a party to the cause of action in North Carolina, and he is now estopped to question the power or authority of the receiver·so appointed.

It is true, that there are seven separate defenses set out in the defendant's answer, but from the view I have taken of the case, if the position above stated is tenable, the other questions need not be considered.   Did the plaintiff, Wilson, become a party to the North Carolina suit?  ·And, if so, is he bound thereby, and estopped to proceed with the present action?   If all the parties were in South Carolina, such action on his part would unquestionably make him a party, and he would be bound by the fact that he proved his claim under the proceedings in the cause, and accepted his *pro rata* of the dividends.   In *Boyce* v. *Same,* 5 Rich. Eq., 268, the bill was to marshal assets, real and personal.   Dunkin, Ch., in delivering the opinion of the Court, uses this language: "Every creditor who came in and proved his debt under the master's notice, became a party to the decree and actor in the proceedings, and was entitled to move for any order to speed the cause or carry the decree into successful execution."   In Beach on Receivers, sec. 713, that author says: "Any creditor who has a claim upon the fund, but who is not a nominal party to the suit, may make himself a party thereto by coming in and presenting his claim under the decree, and submitting himself to the jurisdiction of the Court for the settlement and adjustment of his claim upon the fund to be distributed as directed by the decree or order of the Court under which such claim is presented."   In Matters of the City Bank of Buffalo, 10 Page Chancery, 382, it is said: "Creditors who are not nominal parties to the suit may make themselves such parties in fact, by coming in and presenting their claims to the master under the decree, and by submitting themselves to the jurisdiction of the Court, for the·set-

tlement and adjustment of their respective claims upon the fund, as directed by the decree or order under which such claims are presented." "A creditor who comes in and makes his claim under such decree, is *quasi* a party to the suit, and is entitled to the benefit of the decree as such party. And he may be restrained from proceeding at law for the recovery of his debt, after he has made his election to proceed in this Court for the recovery of his debt under the decree." In Herman on Estoppel, sec. 1056, that author states the rule to be: "When a citizen of one State makes himself a party to the proceedings of his debtor, instituted in another State, to obtain the benefit of the bankrupt or insolvent law, and receives a dividend from the assignee of the bankrupt or insolvent, he abandons the extra territorial immunity which he might otherwise claim from the operation of those laws." In *Cole* v. *Cunningham,* 133 U. S. 107, it is said: "But this objection (extra territorial jurisdiction) would not lie where such citizens had become parties to the proceedings. Hence, in *Clay* v. *Smith,* 3 Pet., 411, it was held when a citizen of Kentucky sued a citizen of Louisiana, and the defendant pleaded his discharge by a bankrupt law of Louisiana, that the plaintiff who had received a dividend on his debt declared by the assignees of the defendant in Louisiana, had voluntarily made himself a party to those proceedings, abandoned his extra territorial immunity from the bankrupt law of Louisiana, and was bound by that law to the same extent to which the citizens of Louisiana were bound; and it may be considered as settled, that State insolvent laws are not only binding upon such persons as were citizens of the State at the time the debt was contracted, but also upon foreign creditors, if they made themselves parties to proceedings under these insolvent laws by accepting dividends, becoming petitioning creditors, or in some other way appearing and assenting to the jurisdiction." Citing *Baldwin* v. *Hall,* 1 Wall., 223; *Gilmore* v. *Lockwood,* 4 Wall., 409.

It, therefore, appears to me that the plaintiff, Wilson, having of his own volition gone in person into the State of

North Carolina and established his claim under the proceedings in North Carolina, and having received dividends thereon from Junius Davis, the receiver appointed in said proceedings, he cannot now say he was not a party to said proceedings, and he is thereby estopped to deny the authority of the receiver appointed. In this State, it is well settled by a number of cases that when a non-resident defendant appears and answers, all defects as to service are cured. And if they voluntarily submit themselves to the jurisdiction of the Court, they are bound by all proceedings had therein. *Chafee* v. *Postal Tel. Co.*, 35 S. C., 378; *Pepper* v. *Shirer*, 48 S. C., 492; *Oliver* v. *Fowler*, 22 S. C., 540; *Granly* v. *Same*, 20 S. C., 104; *Ex parte Perry Stove Co.*, 43 S. C., 186; *Smith* v. *Walker*, 43 S. C., 381; *Campbell.* v. *Home Ins. Co.*, 1 S. C., 158.

It is, therefore, ordered, that the complaint of the plaintiff herein be dismissed.

From this decree the plaintiff appeals.

*Messrs. Purdy & Reynolds* and *Frasers & Cooper*, for appellants, cite: *South Carolina assets to South Carolina creditors:* Rev. Stat., 1470; 14 S. C., 581; 2 Bail., 436; Mills R., 138; 4 McC., 519; 48 S. C., 74; 17 How., 338; Code, 265. *A receiver is only permitted to sue in a foreign Court by the doctrine of comity, and then only when the rights of the State and its citizens are not injured thereby:* 6 Am. St. R., 185; 15 *Ibid.*, 150. *Plaintiff is not estopped by reason of his action in N. C.:* 2 S. C., 183; 1 Pet., 340; 28 S. C., 315; 25 S. C., 388; 19 S. C., 223; *Booth* v. *Clark*, 17 How.

*Messrs. Lee & Moise*, contra, cite: *Voluntary transfer of title to personalty good at domicile of owner, is good anywhere:* 147 U. S., 476; 16 Wall., 622; 96 N. Y., 243; 54 N. Y., 229; 133 U. S., 107; 46 S. C., 260. *Where creditor comes in under bill to marshal assets, he becomes a party to*

*the decree:* 5 Rich. Eq., 563; 8 S. C., 129; 2 Hill Ch., 62; 13 S. C., 280; 4 Johns. Ch., 643. *Same rule prevails as to non-residents:* 35 S. C., 378; 48 S. C., 492; 22 S. C., 540; 20 S. C., 180; 43 S. C., 186, 381; 1 S. C., 158. *And this rule is universal:* 161 U. S., 642; 140 U. S., 105; 107 U. S., 98; 33 U. S., 107. *Judgment in N. C. is binding on plaintiff, and will be enforced by our Courts:* Con. U. S., art. 4, sec. 1; 7 Cranch, 472; 20 Am. Dec., 179; 2 Hill Ch., 583; 14 S. C., 573. *Record is conclusive against parties or privies:* 107 U. S., 20. *If the legislature intended the act of 1893 to be retroactive, it is null and void:* Con. U. S., sec. 10, art. 1; 8 Wheat., 1; 117 U. S., 716; 102 U. S., 203; 16 Wall., 314; 96 U. S., 505; 1 How., 311; 15 Wall., 690.

April 3, 1899.   The opinion of the Court was delivered by

Mr. Justice Jones.   The Bank of New Hanover, a corporation created under the laws of North Carolina, having its principal place of business at Wilmington, being insolvent, on the 19th of June, 1893, made an assignment for benefit of creditors of all its property to the defendant, Davis, as assignee.   Soon thereafter, under a creditor's bill, this assignment was set aside as void, and the defendant, Davis, was appointed receiver by the Superior Court for New Hanover County, in North Carolina.   Then in July, 1893, in the suit of Tate, Treasurer of the State of North Carolina, against the Bank of New Hanover, said Davis, as assignee under the assignment, and said Davis, as receiver under the creditor's bill, the Superior Court for Wake County, in said State, appointed the defendant, Davis, as receiver of all the assets and property of said bank, pursuant to a statute of that State which provides that whenever the State's bank examiner reports a bank as insolvent or in imminent danger of insolvency, the State Treasurer shall file a bill for winding up the affairs of the bank, and administering its assets amongst all of its creditors, without any preference or priority.   The plaintiff, as well as all other creditors

of the bank residing in South Carolina, appeared in the proceedings above mentioned, established their claims, and from time to time received their *pro rata* dividends from the bank assets distributed by said receiver. The greater part of the bank assets from which these payments were made were situated in the State of North Carolina. Among the assets of the bank was the bond and real estate mortgage of Mary E. Keels, defendant, a citizen of this State, and this bond and mortgage went into the actual custody of the said Davis as receiver, who, as receiver, brought an action in the Court of Common Pleas for Sumter County to foreclose said mortgage, and in February, 1897, obtained judgment of foreclosure thereon. But before sale of the land, plaintiff, for himself and all creditors of said bank in South Carolina, brought this action, claiming that he and the other creditors in this State were entitled to be paid out of the assets of said bank in this State before any part thereof is removed from the State, to the exclusion of the creditors not citizens of this State, and to this end prayed for a receiver here to administer the assets in this State. It appears that in April, 1897, Judge Buchanan made an order appointing D. M. Young as receiver in this State, and among other things ordered the master of Sumter County to proceed to sell the land under the said foreclosure proceedings, and to pay proceeds to D. M. Young, as receiver. These proceeds, $2,294.27, are now in the hands of Young, receiver. A number of creditors in this State have proved their claims before Young as receiver, but it appears that all these creditors, like plaintiff, Wilson, had established their claims under the procedings in North Carolina, and had likewise received their *pro rata* of the funds disbursed there. Inasmuch as all the creditors of said bank in South Carolina are in like plight with the plaintiff, Wilson, no further reference to such creditors need be made. The Circuit Court, whose decree is officially reported herewith, sustained the contention of defendant, Davis, and dismissed the complaint herein, on the ground that plaintiff having established his claim in the cause pending in North

Carolina, and participated in the proceeds arising in said cause by receiving his *pro rata* of said funds, he thereby became a party to the cause of action in North Carolina, and he is now estopped to question the power or authority of the receiver so appointed.

We are satisfied that the plaintiff ought not to be permitted to interfere with the collection and disbursement of the proceeds of the bond and mortgage in question by the North Carolina receiver, both upon the ground that he is concluded as to the question of such receiver's right to collect such assets of the bank by becoming a party to the proceedings in North Carolina, and upon the ground of judicial comity. The bond and mortgage were in the actual custody of Davis, receiver, by virtue of proceedings to which plaintiff was a party, and as to plaintiff, it was the right and duty of the receiver to collect the same. The Court of Common Pleas for Sumter County, in this State, had permitted the said North Carolina receiver to obtain judgment of foreclosure, and thus the bond and mortgage in actual custody of the North Carolina receiver were merged into a judgment in favor of the North Carolina receiver. Under this judgment, the land has been sold, and the proceeds are in the custody of the Court. Such proceeds should be paid over to the North Carolina receiver, unless it is made to appear that to do so would conflict with the policy of our laws or infringe the right of creditors in this State. In 20 Ency. Law, pp. 65, 66, the rule as to foreign receivers is, we think, correctly stated in the following language: "The rule in this country is said to be that receivers appointed by one jurisdiction are not entitled as of right to recognition in other jurisdictions, and that courts of equity cannot acquire extra territorial jurisdiction over property by appointing receivers. But expressions of this character have been considered to go too far; and the correct and current doctrine appears to be, that under the principle of comity, the Courts of one jurisdiction will recognize the authority and permit the exercise of the functions of a receiver appointed in another jurisdic-

tion, except in those cases where a Court of the former jurisdiction finds that its own policy would be displaced or the rights of its own citizens invaded or impaired; and this seems to be especially true where such receiver is by the terms of his appointment to gather the assets wherever found * * * Nor is the right to confer such authority to be questioned upon any theory that the receiver's power is limited to the property found within the State where he is appointed; for it is not necessary that the property should be within the jurisdiction of the Court." See, also, same book, pages 241, 242, where it is stated that "citizens in the jurisdiction of the Court appointing the receiver will not be aided by foreign Courts in evading the effect of the appointment." Thus if a creditor of the bank residing in North Carolina and within the jurisdiction of that Court, were here seeking to prevent the North Carolina receiver from collecting and disbursing the fund in question according to appointment, he would not be aided by the Courts of this State. A creditor, though resident in this State, who has voluntarily submitted himself to the jurisdiction of the Court appointing the foreign receiver, has no stronger claim to evade the effect of the appointment. To permit the fund in question to go into the hands of the foreign receiver in this case, is not contrary to any established policy of our law, nor injurious to the rights of domestic creditors. As seen, all the creditors residing in this State have established their claims in North Carolina, and have been receiving dividends from the insolvent's assets there. The North Carolina receiver now represents them, and is seeking to realize this particular asset for their benefit as well as the other creditors of the bank. His claim, therefore, is not hostile to or adverse to their just rights. It appears that under the law of North Carolina, the assets of the bank will be administered among *all* the creditors of the bank without preference or priority. But plaintiff asserts that under the act approved December 20th, 1893, 21 Stat., 409, entitled "An act to declare the terms on which for-

eign corporations may carry on business and own property within the State of South Carolina," creditors of said bank resident in this State have an exclusive right to appropriate to their claims the assets of the bank in this State. This contention is based on section 6 of said act, which is as follows: "That it shall and may be lawful for any Court of competent jurisdiction in this State to take possession of, wind up, administer and marshal the assets in this State of any such foreign corporation (in like manner and in like cases as by law may be done with respect to corporations chartered under the laws of the State,) for the protection of any and all citizens of this State who may be stockholders or creditors of such foreign corporation, as in the case of legatees and creditors (citizens of this State) of deceased persons whose domicile was at the time of their decease outside this State, in respect to assets within this State." We do not construe this act as attempting to give creditors residing in South Carolina the right to appropriate to their claims the assets of a foreign corporation in this State to the exclusion of citizens of other States who are also creditors. There is no doubt that it is the duty of the Courts of this State to protect the interests and rights of domestic creditors concerning assets of a foreign corporation in this State, but there is a vast difference between protecting domestic creditors and sequestrating to them exclusively assets which ought in justice and right be administered for the benefit of all creditors. If so construed as to exclude non-resident citizens, who are creditors, from participating in the assets in this State of a foreign corporation, a grave question as to the constitutionality of the act might be raised. *Blake* v. *McClung,* 19 Sup. Ct. Rep., 165, wherein the Supreme Court of the United States recently decided that while a State may, through judicial proceedings, take possession of the assets of an insolvent foreign corporation within its limits, and distribute them or their proceeds among creditors according to their respective rights, yet it cannot under art. 4, sec. 2, of the Constitution of the United States deny the right of citizens of other

States to participate in such distribution on equal terms with its own citizens. Moreover, the act in question, was passed after the foreign corporation involved here had ceased to do business, and whose property had already been placed in the hands of a receiver; hence such act is not applicable to this case. It thus appears that plaintiff and the creditors of the said bank in this State have by their appearance in the jurisdiction of the Court of the domicile receiver, already secured the right to participate in the equal distribution of the assets of the foreign corporation, all that they have a right to do. Thus no interest of domestic creditors intervene to prevent the exercise of that comity which should induce the Courts of this State to recognize the claim of the foreign receiver to collect for equal distribution the particular assets in question. Nor do we know of any established policy or statute in this State, which prevents the exercise of such comity.

The exceptions to the decree of the Circuit Court are overruled, and the judgment of that Court is affirmed.