[No. 5264.   Decided March 23, 1905.]

ENOK LARSEN, *a Minor, by his Guardian Ad Litem, Martin J. Lund, Respondent,* v. ALLAN LINE STEAMSHIP COMPANY, LTD., *Appellant.*[1]

APPEARANCE—SPECIAL—WHEN WAIVED BY SUBSEQUENT GENERAL APPEARANCE. . Under Bal. Code, § 4886, providing that every application for an order is a general appearance unless stated to be special, a special appearance to set aside a default on the ground that no service had been had, although renewed at the time of filing answer, is waived where the party subsequently appeared generally to file a petition to remove the cause to the United States Court, and entered into a stipulation with reference to the matter without stating that it appeared specially, and after judgment moved for a new trial without limiting the character of the appearance; and error in refusing to set aside the service is thereby waived.

CARRIERS—INJURY TO HEALTH OF PASSENGER—BREACH OF CONTRACT TO PROVIDE FOOD—COMPLAINT—SUFFICIENCY. In an action for injury to a passenger's health, a complaint against a steamship company alleging actionable neglect on the voyage and a breach of the contract of carriage in failing to provide sufficient food and lodging, whereby the plaintiff became sick and permanently deaf, alleges a cause of action.

SAME—CONTRACT OF CARRIAGE—STIPULATION TO FURNISH FOOD—UNAVOIDABLE DELAY—CONSTRUCTION OF CONTRACT. A contract of carriage providing that the steamship company shall furnish good and sufficient food and suitable lodging during the whole of the journey, including "any unavoidable delay," must be construed to cover a delay by reason of government detention in quarantine, especially where it appears that all the food provided while in such quarantine was furnished by the steamship company.

SAME—NON-LIABILITY FOR DELAY NOT EXCUSE FOR NEGLECT. A clause in a contract of carriage exempting the carrier from liability for delay from "restraints of princes, rulers and peoples" does not relieve the company from liability for neglect in failing to provide suitable food and lodging during any such delay.

[1]Reported in 80 Pac. 181.

SAME—EVIDENCE OF BREACH OF CONTRACT AND RESULTING INJURY
TO HEALTH—SUFFICIENCY. In an action for damages for the
breach of a contract of carriage, in failing to provide sufficient
food or lodging during a time that the vessel was detained in
quarantine, whereby plaintiff became sick and permanently deaf,
there is sufficient evidence to sustain a finding for the plaintiff,
and that his injuries were traceable to the exposure, where it
appears that during the first two days the supply of food was
very limited, that during two nights plaintiff had no bedding,
and but one blanket during a stay of eighteen days when the
nights were cold, that in consequence he became sick, and re-
mained so, and was compelled to continue his journey while in
that condition, whereupon he became delirous, that at the end
of the journey, 21 days after the exposure, plaintiff's malady was
meningitis, expert testimony being to the effect that deafness
often resulted therefrom, and that there was no definite period of
incubation of the disease which would sustain the claim that the
time therefor had been too long after the exposure; and findings
thereon for the plaintiff will not be disturbed because of conflict-
ing evidence.

Appeal from a judgment of the superior court for King
county, Griffin, J., entered February 20, 1904, upon find-
ings in favor of the plaintiff, after a trial before the court,
a jury being waived, in an action for damages for breach
of a contract of carriage.    Affirmed.

*Ballinger, Ronald & Battle,* for appellant, upon the
point that the company was not liable for injuries suffered
by reason of the detention in quarantine, cited:    *The
Onrust,* Fed. Cas., No. 10539; *Wilson v. Alabama etc. R.
Co.,* 77 Miss. 714, 28 South. 567, 78 Am. St. 543, 52 L.
R. A. 357; 22 Am. & Eng. Ency. Law (1st ed.); p. 770;
*Hughson v. Winthrop Steamboat Co.,* 181 Mass. 325, 64
N. E. 74, 58 L. R. A. 432.

*Martin J. Lund* and *Fulton & Faben,* for respondent.

HADLEY, J.—This is an action to recover damages for
permanent impairment of the plaintiff's health, resulting
from alleged negligent acts of the defendant. The plaintiff
is a minor, and Martin J. Lund is his duly appointed

guardian *ad litem* for the purposes of this action. It is al-
leged, that the defendant, a corporation, is a common car-
rier, engaged in the business of carrying passengers for hire
from Trondhjem, Norway, to Seattle, Washington; that on
or about the 7th day of May, 1902, at said Trondhjem, the
defendant promised and agreed to carry plaintiff as a pas-
senger for hire from said place to Seattle for the sum of
$85; and also agreed to carry him from Liverpool, Eng-
land, to Montreal, Canada, direct, without landing him at
any other place than Montreal; and further agreed to fur-
nish him, while on said journey between Liverpool and
Montreal, including any delay, with good, wholesome, and
sufficient food, together with good, clean, and warm quar-
ters and bedding; that relying upon said promises, the de-
fendant paid said sum of $85 for transportation from
Trondhjem to Seattle, and received a ticket from the de-
fendant for said purpose; that said agreement was partly
oral and partly in writing, and the portion which was in
writing was contained in the ticket aforesaid, and in a writ-
ten statement delivered by the defendant to the plaintiff at
the time.    It is alleged that, about the date aforesaid, the
plaintiff commenced his said journey, and that, during the
progress thereof, the defendant failed to furnish sufficient
wholesome food and clean, warm quarters and bedding;
that the defendant neglected to land plaintiff at Montreal,
as it had agreed to do, but compelled him to land upon
Grosse Isle, where he was, against his will, confined for a
period of eighteen days; that he was there kept in one
room with two hundred other men, and given no food
for two days, except a small piece of bread, the size of a
man's hand, and was furnished unwholesome and insuffi-
cient food for the remainder of the time; that, while so
confined, he was furnished insufficient bedding and cov-
ering, and that the nights were cold; that by reason there-
of he suffered great physical pain from hunger and cold,

and became sick and feeble; that he was sick and in need of hospital care at the time he was put upon a train, and compelled to continue his journey to Seattle, but that the defendant, knowing of his sick and feeble condition, compelled him to board the train and continue his journey; that he suffered greatly while traveling overland, and arrived at Seattle in a delirious condition; that he was, by his friends, placed in a hospital in Seattle, where he remained for six weeks; that, by reason of his said suffering, his health has been permanently injured and he has lost his power to hear in both ears, he having been thereby rendered entirely deaf for the balance of his life.     He asks damages in the sum of $25,000.

The defendant answered the complaint, denying the material averments thereof, and affirmatively alleging that it is a British corporation, engaged in carrying passengers for hire from Liverpool, England, to Halifax, Quebec, and Montreal, in Canada; that, during the month of May, 1902, the plaintiff became a steerage passenger upon one of defendant's steamships, to be transported by the defendant from Liverpool to Quebec; that during the voyage a case of sickness developed on board the steamer, and, when near the port of Quebec, the government authorities of the Dominion of Canada took possession of the steamer, and assumed control of both the steamer and the passengers; that all steerage passengers, including the plaintiff, were removed to the government quarantine station at Grosse Isle, near the harbor of Quebec, for detention under the government quarantine laws; that the detention of the steamer and passengers was caused by the quarantine authorities, without the consent of the defendant, and was an act unavoidable and beyond the control of the defendant; that the contract of passage by which the plaintiff was transported by the defendant provided, among other things, for the furnishing by defendant to plaintiff of

medical attendance and medicine, during the voyage from Liverpool to the said place of landing; and, further, that the defendant would not be responsible to plaintiff for loss or injury by reason of restraints of princes, rulers, or other authorities. It is averred that the contract for transportation from Liverpool to Quebec was made in England, is an English contract, and governed by the laws of that country; that, under the laws of England, the defendant had a right to limit its liability as against loss or injury occasioned by the restraints of princes, rulers, or other authorities.

The material averments of the answer are put in issue by the reply, and it is affirmatively alleged in reply that, at the time of landing the plaintiff at the quarantine station, the quarters thereof were not equipped with beds, bed clothing, food, or servants for the accommodation of defendant's passengers, and that the fact of such neglect and lack of accommodations was well known to the defendant, who then and there promised and agreed to supply plaintiff and the passengers while confined there with beds, bed clothing, food, servants, and attendants for their accommodation, but that defendant neglected so to do in every particular.

Under issues essentially as stated above, the cause was tried by the court without a jury, a jury being waived, and resulted in a judgment in favor of the plaintiff in the sum of $6,600. The defendant moved for a new trial, which was denied, and it has appealed from the judgment.

The first three assignments of error are as follows: (1) That no service of process was had upon the defendant, and that the court was without jurisdiction in the premises; (2) that the court erred in refusing to grant defendant's motion to set aside the order of default unconditionally; (3) that the court erred in requiring the defendant, as a condition of setting aside the previous order of default, to

enter a general appearance and answer.    The above may be discussed together.

The return as to service recites that it was made upon appellant in King county, by delivering to and leaving with Andrew Chilberg, the managing agent of appellant, a copy of the summons and complaint.    A default was entered against the appellant, based upon said service. Thereafter the appellant appeared specially, and moved that the order of default be set aside, on the ground that no personal service was had, and that the court was without jurisdiction to enter any order in the premises.    The motion was based upon the claim that Andrew Chilberg was not the agent of appellant.    Thereafter the court entered an order vacating the default upon condition that appellant should, within two days, answer the complaint, and, in case of failure to do so, the motion should be denied.    Thereupon the appellant answered the complaint.

Respondent urges that appellant·has waived the matter of service, and, also, any error in the court's conditional order of vacation, in that it has appeared generally by the interposition of an answer to the merits, upon which issues were made and tried.    The authorities are not uniform upon this subject, as was conceded in *Woodbury v. Henningsen,* 11 Wash. 12, 39 Pac. 243, where it was held that, after special appearance and objection to the jurisdiction before a justice of the peace, the submission to a trial does not constitute a waiver of want of jurisdiction.    But in the case of *Walters v. Field,* 29 Wash. 558, 70 Pac. 66, it was held that, if one answers to the merits, after appearing specially, he must still preserve his special appearance, or it will be waived and his appearance will become general.    Under Bal. Code, § 4886, a defendant appears when he answers, demurs, or makes any application for an order in a case, and every such appearance shall be deemed general unless the defendant in making it shall state that it is

special.    The statute seems to contemplate that *every* appearance in a cause calling for an order for any purpose shall be deemed general unless otherwise specified.

In *Walters v. Field, supra,* the special appearance was preserved in all motions and pleadings up to a given point, and thereafter it was not noted, by reason whereof it was held to have been waived.    In the case at bar, we fail to find the original answer in the record, but the amended answer recites, preliminarily, that it is filed without waiving objections theretofore urged on special appearance.

Assuming that this was sufficient to preserve the special appearance, we are nevertheless confronted with other appearances in the record which are not so limited.    The appellant filed a petition to remove the cause to the United States circuit court.    Respondent answered the petition, and urged lack of jurisdiction in the latter court.    Appellant replied to this plea without any limitation as to the character of its appearance.    Again, while the petition for removal was pending before the federal court, a stipulation between the parties was filed in the cause, which recited certain agreed facts pertaining to the citizenship of respondent, and also stipulated that, if upon such facts the United States court had not jurisdiction, then the cause should be remanded to the state court.    In said stipulation appellant in no way stated that it appeared specially for the purpose.    The cause was remanded to the state court, and tried, after which appellant moved for a new trial, and afterwards filed an amended motion stating additional grounds.    In neither of said motions was there any limitation as to the character of the appearance.

Therefore, even if it be conceded that the rule is adopted by this court that answering to the merits, after a special appearance, where the answer expressly attempts to preserve the rights under the special appearance, does not amount to a waiver, still the several appearances of appel-

lant last above noted were general, and, under the rule al-
ready announced by this court, as above stated, they con-
stituted a waiver of the special appearance. What may ap-
pear to be strictness in this rule commends itself to us, for
the reason that a defendant may stand upon his special
appearance without the necessity of a long, tedious, and
expensive trial, as was had in this case. But if he chooses
to pursue the latter course, he should at least make clear
with all of his appearances that he has not waived his spe-
cial appearance. Any error involved in the assignments
above mentioned has, therefore, been waived, and the court
had jurisdiction of the person of the defendant.

The assignment that the court erred in receiving any
testimony at the trial over appellant's objection, and in
denying the motion of the latter to strike testimony, on
the ground that the complaint failed to state any cause
of action against appellant, is not well taken. The essen-
tial facts averred in the complaint are somewhat fully
stated above, and we think they state a cause of action
against appellant.

While the complaint alleges actionable neglect on the
part of appellant during the voyage across the ocean,
yet at the trial the evidence was mainly directed to the
claim of neglect on its part during the period of quar-
antine, and upon that evidence the case seems to have
been determined as it was by the trial court. It is first
contended that the law does not hold appellant responsible
for injuries received during quarantine. That must de-
pend upon its contract. The original contract held by
respondent was shown to have been lost, and secondary
evidence as to its contents was introduced in the way of
another contract, which respondent testified was in all re-
spects like the original, with the exception of the inserted
name, date and amount paid for passage. The contract as

shown called for passage from Trondhjem to Seattle in the following manner:

"(1)   By steamship to Hull, where the separate steamship ticket is to be given up.   (2)   By railway to Liverpool. . (3)   By steamship to Quebec, Boston, Halifax, Portland, Philadelphia, or Baltimore.   (4)   By railway to destination."

The contract also contained the following:

"During the whole journey hence to America passengers will be supplied with good and sufficient food as well as with suitable lodging, and this arrangement stands equally good in the event of any unavoidable delay or accident interrupting the journey."

The above being without any limitations, we think was sufficient to cover the "unavoidable delay" required by the quarantine.   The possible delay by quarantine must have been well known to appellant as an ocean transportation company, and yet the contract covers all delays with no limitations as to quarantine.   That appellant understood that it was obligated to furnish sufficient food and suitable lodging during quarantine, as well as during delays from other causes, is emphasized by the fact, which is shown in evidence, that it did furnish the food and bedding that were supplied to the passengers during the quarantine of respondent and his fellow passengers.   The buildings and grounds were supplied by the government of Canada, and appellant was required to land the steerage passengers at said place; but the actual supplies were furnished and distributed by appellant.

The contract containing the above provisions was delivered to respondent at Trondhjem, where he also received a receipt for the passage money.   Upon reaching Liverpool he received an additional paper called "Passengers' Contract Ticket," which specially admitted him to passage

upon the steamship "Ionian" of appellant's line. Upon the back of the latter paper was printed the following:

"Neither the ship owner nor the passage broker or agent is responsible for loss of, or injury to, the passenger, or his luggage, or personal effects, or delay on the voyage arising from steam, latent defects in the steamer, her machinery, gear, or fittings, or from act of God, Queen's enemies, perils of the sea or rivers, restraints of princes, rulers, and peoples, barratry or negligence in navigation of the steamer or of any other vessel."

It is argued that the above was a provision of a contract made in England, and that it must be governed by the laws of England. A decision of the supreme court of the United States (*Liverpool Steam Co. v. Phoenix Ins. Co.,* 129 U. S. 397, 9 Sup. Ct. 469, 32 L. Ed. 788) was introduced in evidence for the stated purpose of showing that, under the laws of England, the appellant had a right to thus limit its liability. Without discussing that matter, it is sufficient to say that the provision in question does not purport to limit appellant's liability for what is charged against it in respondent's complaint. The liability shown in the complaint is not predicated alone upon injury arising out of mere *delay* from "restraints of princes, rulers, and peoples," but is based upon the *neglect* of appellant to furnish sufficient food, with suitable bedding and covering, during the period of such restraint. The fact that the authorities restrained and delayed respondent is not urged as a ground of recovery. That was an act intended to serve the welfare of humanity, because of the existence of a case of smallpox on board the steamer. The charge is, however, made that appellant neglected the duties which it assumed as incidental to such delay. We, therefore, think that, if such neglect has been shown, and if respondent's injuries resulted therefrom, the appellant is liable.

It is next argued that negligence of appellant has not been shown by the evidence. There is much evidence in the record upon this subject, and there is also conflict therein; but it is conceded by appellant that, during the first two days of the quarantine, the supply of food was very limited. The respondent testified that, during the first two nights on the island, he had no bedding; and that during that time he had practically no food, by reason whereof he was very cold and hungry. He says that the third night he was furnished a single blanket and a straw mattress, which was all the bedding that was furnished him during his whole stay on the island; that the nights were cold and that, during some of the nights, water standing outside of the building was frozen; that on one side of the building there was a broken window, and that cold winds blew from the north; that, after the first night on the island, he felt sick, and so remained until he became delirious while on the train. As to some of the foregoing facts, he is disputed by other witnesses, but the court found the facts substantially as testified to by respondent, and his testimony was so corroborated that we do not feel justified in disturbing the findings. We therefore think the negligence of appellant was established.

It is further argued that it was not shown that respondent's deafness was due to appellant's neglect. There was much testimony of physicians as experts bearing upon that subject. The physician who took immediate charge of respondent upon his arrival in Seattle, and who treated him thereafter, testified that his malady was then meningitis. There was much testimony that total deafness is a common result from such affliction. An effort was made by appellant to show that respondent was feeble when he left Norway, and when he went upon the island, but we think this was by no means established. A further effort was made to show that the disease could not have result-

ed from exposure upon the island, for the reason that the time had been too long for the ordinary period of incubation for meningitis.   The confinement in quarantine was eighteen days, and the entire trip overland to Seattle after his release occupied six days, making twenty-one days from the commencement of any exposure upon the island.   The weight of the testimony of the physicians is to the effect that there is no definite period for incubation of the disease mentioned, and we shall not disturb the court's finding that respondent's injuries are traceable to his exposure upon the island. and to the neglect of appellant.

We find no error in the record, and the judgment is affirmed.

Mount, C. J., Fullerton, and Dunbar, JJ., concur.

Rudkin, Root, and Crow, JJ., took no part.