[No. 14463. Department One. April 3, 1918.]

MATT MATSON, *Appellant,* v. KENNECOTT MINES COMPANY *et al., Respondents.*[1]

APPEARANCE—GENERAL OR SPECIAL—ANSWER TO MERITS. An answer on the merits praying for a dismissal and costs, is general, although it attempted to preserve a special appearance made on motion to quash service of process after overruling the motion; in view of Rem. Code, § 241, providing that every appearance is a general appearance, unless the defendant in making the same states that the same is a special appearance.

CORPORATIONS — ACTIONS AGAINST AFTER DISSOLUTION — STATUTES. Under § 90 of the general corporation law of Nevada, continuing the life of dissolved corporations for one year for the purpose of winding up pending litigation, an action commenced against a dissolved corporation of Nevada will not be dismissed where it made its general appearance in the action within the year limited.

CORPORATIONS—FOREIGN CORPORATIONS—DISSOLUTION—WHAT LAW GOVERNS. The laws of the state of creation govern the existence and dissolution of corporations and will be given extra-territorial effect and recognition.

[1]Reported in 171 Pac. 1040.

ACTIONS — JOINDER — PARTIES — BRINGING IN NEW PARTIES.  In an action for personal injuries against a corporation, it is proper to refuse to bring into the case a third person and another corporation for the purpose of obtaining an accounting from them for property of the corporation appropriated by them, since the same was not a proper subject of litigation in such action.

JUDGMENT — DEFAULT — FAILURE TO ANSWER AMENDMENT.  The denial of a motion for default in answering a third amended complaint is proper where it was the same as the second amended complaint which defendant had already answered.

STATUTES — FOREIGN LAWS — PLEADING.  The pleading of § 90 of the general corporation act of Nevada was not necessary for its introduction in evidence to negative the effect of § 89 of the act, set up by the defendant to show the dissolution of the corporation before suit.

Appeal from orders of the superior court for King county, Jurey, J., entered June 2, 1917, dismissing an action for personal injuries and denying a new trial, after a hearing before the court.  Affirmed as to one defendant; reversed as to the other.

*George H. Rummens, Wilmon Tucker, Heber Mc-Hugh,* and *John T. Casey,* for appellant.

*Roberts, Wilson & Skeel* and *Bogle, Graves, Merritt & Bogle,* for respondents.

PARKER, J.—This action was originally commenced in the superior court for King county against the defendant Kennecott Mines Company, a Nevada corporation, by the plaintiff Matson, seeking recovery of damages for personal injuries which he claims to have suffered as the result of the negligence of that company while working at its mines in Alaska in January, 1915.  Thereafter Matson filed his third amended complaint, attempting to make Birch a party defendant to the action, which complaint was served upon Birch together with a summons.  The case is in this court upon an appeal by Matson from orders of the superior court

dismissing the case as to both defendants and denying him a trial upon the merits.

The dismissal of the case as to the company was, by the trial court, rested upon the ground that it had been disincorporated before the commencement of the action. While counsel seek to sustain the order of dismissal upon that ground, they also seek to sustain the order upon the ground that the superior court never, in any event, acquired jurisdiction over the person of the company, either by an effective service of summons upon it in this state, or by its general appearance in the action. The dismissal as to the defendant Birch was, by the trial court, rested upon the ground that no cause of action was stated against him in the third amended complaint which could be a proper subject of litigation in this case.

On June 1, 1915, Matson signed and verified his original complaint in this action. Thereafter that complaint, together with the summons in usual form, was served upon four different persons in this state, at different times, as resident agents of the company, who were claimed by Matson to be agents of the company upon whom service might be effectually made for it at the time each service was so made. Thereafter counsel for the company appeared specially and made motions to quash the service of the summons upon each of these persons as service upon the company, which motions were rested upon the ground that neither of the persons so attempted to be served was an officer, agent, or representative of the company in this state. We do not find, in either of these motions or elsewhere in this record, any claim that the Kennecott Mines Company was not doing business in this state of such nature and extent that it was subject to be sued therein upon a cause of action such as Matson set forth in his several complaints, apart from the

claim that it had been disincorporated. These motions to quash were brought on for hearing before the court, when, after hearing evidence and argument of counsel, they were by the court denied. Thereafter the company, by its counsel, answered Matson's complaint upon the merits, denying that its negligence resulted in, or contributed to, the injury of Matson as alleged by him, and affirmatively pleading contributory negligence and assumption of risk on his part, and also that his injuries, if any, resulting from the fault of persons other than himself, were the result of the fault of his fellow servants. In the making and filing of this answer, the company attempted to preserve its special appearance as made in its motions to quash the service of summons. The portions of the answer, aside from its denials and pleading of affirmative defenses as above noticed, bearing upon the question of whether the company preserved its special appearance in the action, are the following:

"Comes now the defendant, Kennecott Mines Company, the court having overruled and denied its motion to quash service in this action and not waiving its motion to quash the service, and still reserving its special appearance, and its right to contest the question of the jurisdiction of this Honorable Court, submits this its answer to the complaint of the plaintiff.

"Wherefore the defendant Kennecott Mines Company having fully answered the complaint of plaintiff prays for judgment for dismissal and for costs."

Thereafter Matson filed his amended complaint and his second amended complaint, both of which were answered in order by the company in substance the same as it had answered his original complaint.

On June 14, 1916, the cause came regularly on for trial in the superior court sitting with a jury, counsel for the company still insisting that the appearance of the company was special and not general. Counsel for

the company then presented to the court and offered in evidence a duly certified copy of the articles of incorporation of the company, showing that it was a corporation organized under the laws of Nevada in November, 1906. Indorsed upon the certified copy of the articles so presented and offered in evidence was a statement over the signature of the secretary of state of Nevada, as follows: "Dissolved June 10, 1915." Counsel for the company also presented to the court and offered in evidence a duly certified copy of § 89 of the general corporation law of Nevada relating to the voluntary dissolution of corporations of that state. That section, after providing for the procedure and the manner of giving consent to a dissolution by those interested, provides that certain written evidence thereof

"shall be filed in the office of the secretary of state, who, upon being satisfied by due proof that the requirements aforesaid have been complied with, shall issue a certificate that such consent has been filed, and the corporation shall thereby be dissolved, and the secretary of state shall make an indorsement to that effect on the original certificate of incorporation and on the amendments thereto in his office."

Counsel for the company also presented to the court and offered in evidence a certificate of the secretary of state of Nevada, made as provided by the above quoted portion of section 89, further evidencing the disincorporation of the company. This was the first claim made that the company had been disincorporated. These papers showed an apparent disincorporation of the company before the commencement of the action. Thereupon counsel for Matson, claiming surprise at this proof of apparent disincorporation, having no notice that there would be a claim of its disincorporation, asked for a continuance of the cause to the end that they might be able to show that the company was,

in fact, not disincorporated and, if necessary, plead additional facts to that end. The trial court thereupon granted this request, dismissed the jury and continued the case. The case was never thereafter brought to trial upon the merits.

Thereafter counsel for Matson filed his third amended complaint, setting up his cause of action against the company the same in substance as in his second amended complaint, upon which the case was proceeding to trial when continued. In this third amended complaint it was sought to make Stephen Birch a defendant in the action, upon the theory that he was the moving spirit in bringing about the disincorporation of the company and the organization of a new corporation which succeeded to the rights and properties of the company, and that this was accomplished by the fraudulent acts of Birch. That portion of the third amended complaint is a somewhat involved story, but we think this is a sufficient noticing of its nature. This third amended complaint, together with a summons in usual form, was served in King county upon Birch, who was then temporarily there, but whose residence was not in this state. Thereafter several motions were made by the respective parties which presented the question of Matson's being entitled to default as against both the company and Birch for want of answer to his third amended complaint; the question of the sufficiency of the allegation of Matson's third amended complaint to constitute a cause of action against Birch, properly triable in this case, the question of the dismissal of the third amended complaint and of the action as to Birch; and the question of the striking of the third amended complaint and the dismissal of the action as to the company. These motions were apparently all heard together, upon which hearing the court had before it the certified

copies of the articles of incorporation of the company, the indorsement thereon, and the certificate of the secretary of state of Nevada apparently showing that the company had been disincorporated, which papers had been offered in evidence upon the trial terminated by the continuance. The court also had before it a printed pamphlet offered in evidence by counsel for Matson, purporting to be an official publication of the general corporation law of Nevada issued by the secretary of state of Nevada, which pamphlet was considered in evidence by the court without objection on the part of counsel for the company, and which pamphlet contained § 89, above noticed and quoted from, and also the following provisions in § 90 of the general corporation law of Nevada:

"All corporations, whether they expire by limitation, or are otherwise dissolved, shall nevertheless be continued as bodies corporate, for the term of one year from such expiration or dissolution, and until all litigation to which such corporation is a party, if begun within that time and process served within said year, is ended, for the purpose of prosecuting and defending suits by or against them, begun within said time, . . ."

The result of the hearing upon these motions was that the court entered two orders which, in effect, finally terminated the action, both as to the company and Birch, and prevented a trial thereof upon the merits: (1) An order dismissing the action as to the company, containing recitals showing that the order of dismissal was by the court rested upon the ground that the company had been disincorporated and dissolved under the laws of Nevada before the commencement of the action; and (2) an order dismissing the action as to Birch, containing recitals indicating the court's opinion that Matson's third amended complaint did not constitute a cause of action against Birch tri-

able in this action. The appeal of Matson is taken from
these two orders terminating the action, and also from
a subsequent order made by the court denying Matson
a new trial upon the merits.

In so far as we are concerned with the claim of er-
ror in the entering of the order of dismissal as to the
company, we have here presented two questions: (1)
Assuming that the company was not disincorporated
so as to prevent the commencement of this action
against it, did the trial court acquire jurisdiction over
the person of the company either by service of sum-
mons upon it in this state or by its general appearance
in the action. (2) Was the company disincorporated
under the laws of Nevada so as to prevent the com-
mencement of this action.

We pass, without deciding, the question of whether
jurisdiction was acquired by the court over the person
of the company by service of summons upon it in this
state, since we have arrived at the conclusion that, in
any event, jurisdiction was acquired over it by its gen-
eral appearance in the action, and that it appeared gen-
erally therein when it answered the original complaint
upon the merits and prayed for a dismissal of the ac-
tion and for judgment for costs against Matson. Sec-
tion 241, Rem. Code, relating to the appearance by de-
fendants, reads in part as follows:

"A defendant appears in an action when he answers,
demurs, makes any application for an order therein, or
gives the plaintiff written notice of his appearance.
. . . Every such appearance made in an action shall
be deemed a general appearance, unless the defendant
in making the same states that the same is a special
appearance."

The concluding words of this section may suggest
the thought that a defendant can limit any appearance
he may make in an action so as to make it a special

appearance only, and thereby avoid submitting himself generally to the jurisdiction of the court, by simply stating "that the same is a special appearance," regardless of its real nature, and regardless of the fact that he may, in the making of his appearance, invoke the jurisdiction of the court by asking the rendition of a judgment or order in the case such as the court could only render when it has jurisdiction over the persons of the parties to the action. This, it seems to us, is the only possible theory upon which counsel for the company can rest their argument that the statements in their several answers effectively preserved their special appearances made in their several motions to quash the services of the summons. We think that the language of § 241, above quoted, does not mean that an appearance, which by its very nature is general, can be made special by the mere designation of it as such by the one making it; but that the language of the section means only that no appearance which by its nature can be made special will be regarded as special, unless the party asking it states that "the same is a special appearance;" that is, that even a motion confined by its terms exclusively to a challenging of the court's jurisdiction over the person of the defendant will not be considered a special appearance unless stated to be such, and that no appearance, which by its very nature is general, can be made special by a statement that it is special. When the company answered upon the merits in this case and prayed for judgment of dismissal and for costs, it in effect invoked the jurisdiction of the court and asked a determination of the cause upon the merits, which, of course, could not be done by the court unless it had jurisdiction over the person of both the company and Matson. Manifestly this prayer of the company's answers was more than a prayer for dismissal for want of jurisdiction. To so limit it

would be to lose sight of both the negative and affirmative defenses pleaded in the body of the company's answers going to the merits of the case. The denials and allegations of the answers did not touch the question of jurisdiction, but related wholly to the merits of the case. Nor does the fact that the company stated in the introduction to its answers that it was preserving its special appearances negative the fact that it was also defending the case upon the merits.

In *Teater v. King*, 35 Wash. 138, 76 Pac. 688, there was involved a motion, in form a special appearance,

"(1) to quash the summons, and set aside the service thereof; (2) to set aside and quash the writ of restitution, for the reason that the same was prematurely issued, and that the court had no jurisdiction to issue the same; and (3) to dismiss the said action, for the reason that no summons had been issued and served in said cause as required by law."

The court sustained the motion to quash the summons, but refused to quash the writ of restitution or dismiss the action. Later, another summons was issued and apparently served on the defendant. It was also moved against, as the former one was. The court, however, finally ruled that it had jurisdiction of the person of the defendant by virtue of his appearance in his motion to quash; this, upon the theory that it was in effect a general appearance. This court disposed of the question of jurisdiction over the person of the defendant, holding the appearance to be general, as follows:

"The appellant's position is that the action abated, when the original summons and service thereof were quashed and set aside, and therefore carried the proceedings for the writ of restitution with it, as an incident, and that the trial court erred in not quashing the writ and dismissing the case. There would be much force in appellant's contention, if he had not asked

the court below to dismiss the action. The appearance of appellant was in form special, for the purpose of objecting to the court's jurisdiction over his person, but in the body of his motion he invoked the jurisdiction of the court below on the merits, when he asked for a dismissal. A party desiring to successfully challenge jurisdiction over his person should not call into action the powers of the court over the subject-matter of the controversy. By so doing, he waives his special appearance, and will be held to have appeared generally.''

This view of the law was adhered to in *Bain v. Thoms,* 44 Wash. 382, 87 Pac. 504. It may be said that, in that case, there was an asking for relief which was more clearly a submission to the jurisdiction of the court than in the *Teater* case. However, the defendant in the *Bain* case stated in his motion that he was "appearing specially herein for the purpose of questioning the jurisdiction of the court, and for no other purpose.'' Holding that the appearance was general and not special, though expressly stated in the motion to be special, this court quoted with approval from *Burdette v. Corgan,* 26 Kan. 102, as follows:

"... we remark that this appearance by the motion, though called special, was in fact a general appearance, and by it this defendant appeared so far as she could appear. The motion challenged the judgment not merely on jurisdictional but also on nonjurisdictional grounds, and whenever such a motion is made the appearance is general, no matter what the parties may call it in their motion.''

We note that the *Bain* case, and also the Kansas case quoted from, involved motions to vacate default judgments upon the ground, among others, of want of jurisdiction over the persons of the defendants therein, but the problem presented in those cases was the same in substance as here, because the question in each was one of requiring the moving defendant to answer upon

the merits, as well as one of the setting aside of the default judgments for want of process. It is also to be noted that the *Teater* and *Bain* cases were decided by this court long after the enactment of Rem. Code, § 241, above quoted from, and while the concluding words of that section, relied upon by counsel for the company in this case, were a part of our statute law relating to appearance.

The reason of this view of the law is well stated by the supreme court of Wisconsin in *Lowe v. Stringham*, 14 Wis. 241, as follows:

"We think it is also a waiver of such a. defect [want of jurisdiction] for the party, after making his objection, to plead and go to trial on the merits. To allow him to do this, would be to give him this advantage. After objecting that he was not properly in court, he could go in, take his chance of a trial on the merits, and if it resulted against him, he could set it all aside upon the ground that he had never been properly got into court at all. If a party wishes to insist upon the objection that he is not in court, he must keep out for all purposes except to make that objection."

See, also, *Merrill v. Houghton*, 51 N. H. 61; *Bucklin v. Stickler*, 32 Neb. 602, 49 N. W. 371; *Honeycutt v. Nyquist, Petersen & Co.*, 12 Wyo. 183, 74 Pac. 90, 109 Am. St. 975; *State ex rel. Mackey v. District Court of Fifth Judicial Dist.*, 40 Mont. 359, 106 Pac. 1098, 135 Am. St. 622; 2 R. C. L. 327; 4 C. J. 1318.

The early decision of this court in *Woodbury v. Henningsen*, 11 Wash. 12, 39 Pac. 243, holds to the contrary of our conclusion here reached. That discussion was not accompanied by the citation of any authorities upon the subject. We think that decision was in effect overruled by our later decisions in the *Teater* and *Bain* cases, above noticed.

In *Deming Inv. Co. v. Ely*, 21 Wash. 102, 57 Pac. 353, the challenge to the court's jurisdiction was upon

the ground that the case was not one wherein jurisdiction could be acquired by the publication of summons. It was held that, since the defendant's appearance was special in form and his motion went only to the question of jurisdiction over his person, he did not appear generally by moving to quash the service of the summons. In so holding, the court observed:

"If the granting of the relief requested in the appearance is consistent with a want of jurisdiction over the person, the defendant may appear for a special purpose, without submitting himself to the jurisdiction of the court for any other purpose."

This is quite in harmony with our present view of the law.

In *Walters v. Field,* 29 Wash. 558, 70 Pac. 66, wherein there was an answer by the defendant upon the merits, without any statement therein claiming such appearance to be special or claiming the preservation of his prior special appearance, the court did say, at page 565 of the opinion, that:

"The defendant could have preserved his special appearance in his answer to the merits, but he did not see fit to do so."

However, a reading of that decision, we think, renders it plain that the question of the preservation of a former special appearance by a statement to that effect in an answer upon the merits was not at all necessary to be decided in the case. If this can be considered as anything more than mere dictum, it was, in any event, also overruled in our later *Teater* and *Bain* cases, above noticed. This is the only American decision coming to our notice which can be at all regarded as suggesting that an appearance by an answer to the merits can be made special by merely asserting it to be special.

In *Larsen v. Allan Line Steamship Co.*, 37 Wash. 555, 80 Pac. 181, 9 L. R. A. (N. S.) 1258, it seems to have been assumed merely for the purpose of argument that a special appearance can be preserved when the court is asked to make some ruling in the case other than upon the question of its jurisdiction over the person of the defendant. We do not think this decision is of any controlling force here, especially in view of our later decision in the *Bain* case, above noticed. We conclude that the superior court acquired jurisdiction over the person of the company by virtue of its general appearance, assuming that it was not disincorporated prior to the commencement of this action.

Was the company disincorporated under the laws of Nevada prior to the commencement of this action, so that it could not be sued as a corporate entity? If we had nothing before us other than the copy of its articles of incorporation with the indorsement thereon, certified by the secretary of state of Nevada, the certificate of the secretary as to the disincorporation of the company, and § 89 of the corporation law of Nevada, we would probably be required to hold that the disincorporation so evidenced would prevent the maintenance of this action. But when we look to the language of § 90 of the general corporation law of that state, here in evidence, which is above quoted from, it at once becomes apparent that, in so far as this action and its prosecution to final judgment is concerned, the company is not disincorporated. That section is as much a part of the law of the company's corporate being as § 89 of the general corporation law of Nevada, here relied upon by counsel for the company to show its disincorporation. Some contention is made that the provisions of § 90, continuing the life of a corporation for the purpose of continuing pending actions against

it and for the purpose of commencing actions against it, have no extraterritorial effect. We cannot agree with this contention. There is nothing in § 90, or elsewhere in the Nevada corporation law here in evidence, indicating to our minds any intent on the part of the legislature of Nevada to continue the corporate existence of a corporation of that state, as provided in § 90, only in that state.

The court of appeals of New York, in the comparatively recent case of *Sinnott v. Hanan*, 214 N. Y. 454, 108 N. E. 858, had for determination this exact question in substance, although that was a question of abatement of a pending action. A New Jersey corporation was disincorporated under the New Jersey law, much like this Nevada law, pending an action against it in the New York courts. Disposing of the question in harmony with our present view, Judge Collin, speaking for the New York court of appeals, said:

"The Corporation Act of New Jersey contained, however, a section (§ 53) as follows:

" 'All corporations, whether they expire by their own limitation or be annulled by the legislature or otherwise dissolved, shall be continued bodies corporate for the purpose of prosecuting and defending suits by or against them and of enabling them to settle and close their affairs, to dispose of and convey their property, and to divide their capital, but not for the purpose of continuing the business for which they were established.'

"Inasmuch as this section relates to and regulates the corporate existence and power, it has extraterritorial operation and effect, even as had the statute under which the corporation was created and which was a part of its charter and the law of its existence. *Relfe v. Rundle*, 103 U. S. 222; *Michigan State Bank v. Gardner*, 15 Gray 362. The existence and the powers of any foreign corporation coming into this state to

do business are at all times subject to the law of its creation and of its domicile and, additionally, to our laws relating to it, and the terms laid down by our legislature as conditions of allowing it to transact business here. (*Bank of Augusta v. Earle,* 13 Peters 519, 588, 589; *Demarest v. Flack,* 128 N. Y. 205; *Hoyt v. Thompson's Executor,* 19 N. Y. 207.) The sections we have quoted are, therefore, entitled to recognition and enforcement by the courts of this state. They apparently and under authority (*American Surety Co. v. Great White Spirit Co.,* 58 N. J. Eq. 526) are parts of a legislative scheme respecting corporations, are in *pari materia,* and to be construed together. Their effect was to continue the life of the corporation as to its capacity to prosecute and defend suits by or against it, to settle and close its affairs, to dispose of and convey its property and to divide its capital, and to destroy its capacity and existence in all other respects and for all other purposes. Under them the action did not abate, because as to it the corporate existence was not affected. The corporation remained the defendant, with its power and authority to defend existent and unlessened.''

Counsel for the company call our attention to *Marion Phosphate Co. v. Perry,* 74 Fed. 425, which they claim supports the contrary view. We do not so regard that case. It was there attempted to invoke the law of Florida in the determination of the question of the disincorporation of a Georgia corporation which became a party to litigation in the Federal court in Florida. The fifth Federal circuit court of appeals held simply that:

"The Chatham Investment Company, incorporated under the laws of the state of Georgia, when dissolved according to those laws, became a dissolved corporation everywhere,—dead in Florida as well as Georgia.''

It was not claimed or suggested in that case that the corporation law of Georgia had any saving provision as to disincorporation, as the law of Florida

had, which was much like § 90 of the Nevada law here in evidence. That decision, like the New York decision above quoted from, means only that the coming into and going out of existence of a corporation is determinable from the laws of the state of creation. 10 Cyc. 1323. The defendant company, as we have seen, entered its general appearance in this action in January, 1916, when it filed its answer to Matson's original complaint. It was disincorporated for purposes other than that of litigation by and against it, and some other purposes not of moment here, in June, 1915, less than one year prior to entering its general appearance in this action, which had the same effect as the due service of a summons upon it at that time.

Thus this action comes within the express terms of § 90 of the Nevada law, which, in effect, continued the corporate existence of the company for the purpose of commencing actions against it for the period of one year following its disincorporation for other purposes. We are of the opinion that the company had a legal existence as a corporate entity for the purposes of this action at the time of its commencement, assuming that it was commenced at the time the company entered its general appearance therein; and that the action having been so commenced within one year following the disincorporation of the company for other purposes, the action may now proceed to final judgment upon the merits in favor of or against the company as a corporate entity. We conclude that the superior court erred in dismissing the action as to the defendant Kennecott Mines Company.

Did the superior court err in striking Matson's third amended complaint and dismissing the action as to Birch, whom Matson, by that complaint, attempted to bring into the case as a defendant with the company?

We think not. In so far as Matson's cause of action against the company is concerned, it was set forth in his third amended complaint in substance the same as in his second amended complaint, upon which the trial was proceeding when the continuance was ordered. Manifestly the only purpose of the third amended complaint was to bring Birch and another corporation, which was not served, into the action as defendants, to the end that Birch and the other corporation might be compelled to account for the property of the company, which it was alleged they had appropriated in connection with the disincorporation of the company and the organization of the other corporation. We are of the opinion that this was not a proper subject of litigation in this action, though it may be a proper subject of litigation in another action looking to the compelling of an accounting for property of the company so alleged to have been appropriated, when Matson shall have recovered a judgment against the company in this action.

As to Matson's motion for default against the company for failure to answer his third amended complaint, we think the court did not err in denying it. The company had already answered the same allegations in Matson's second amended complaint.

It is also clear to us that the introduction in evidence, upon the hearing of the motions to dismiss, of the copy of the corporation law of Nevada, embodying § 90 thereof above quoted from, needed no prior pleading thereof, in view of the fact that it was introduced to negative the claimed disincorporation of the company. Hence the striking of Matson's third amended complaint, though properly done, did not in the least affect his right to have the court consider § 90 of that law in connection with § 89, offered in evidence and relied

upon by counsel for the company as showing its dis-incorporation.

The order dismissing the action as to the defendant Stephen Birch is affirmed. The orders dismissing the action as to the defendant Kennecott Mines Company and denying to the plaintiff Matson a new trial upon the merits as against that company are reversed. The cause is remanded to the superior court for trial upon the merits as against that company, upon Matson's second amended complaint, the answer of the company thereto, and Matson's reply to that answer, and for such further proceedings as are not inconsistent with this decision.

The defendant and respondent Birch is entitled to recover his costs in this court as against the plaintiff and appellant Matson, and Matson is entitled to recover his costs in this court as against the Kennecott Mines Company.

ELLIS, C. J., WEBSTER, MAIN, and FULLERTON, JJ., concur.