E. Remington & Sons *vs.* Samana Bay Company & others.

Bristol.    Oct. 28, 1885. — Jan. 9, 1886.    Field & C. Allen, JJ., absent.

The charter of a corporation, which was granted by a foreign government, provided that no subscriber to the capital should be individually liable for any debt or liability of the corporation beyond the par value of the stock subscribed by him; and that no holder of stock in the corporation should be proceeded against for the collection of any debt of the corporation until judgment thereon should be obtained against the corporation, and an execution on such judgment should be returned unsatisfied. *Held*, that a bill in equity, by a creditor of the corporation, to reach the amount remaining unpaid upon a subscription for the stock of the corporation, could not be maintained, unless the plaintiff had recovered a valid judgment against the corporation.

The charter of a corporation, granted by the Dominican government, constituted a part of a document called " Convention for the lease of the Peninsula and Bay of Samana, and for other purposes." By one article, the charter was to become operative on January 1, 1873, and was to continue in force for ninety-nine years, upon condition that the corporation should pay to the Dominican government a certain sum annually, in advance, on the first day of January of each year. The next article provided that " this convention " might be declared null and void by " the government of the said republic " whenever the corporation should fail to fulfil the conditions established in the preceding article, except in case of war, or of other controlling circumstance duly attested, when thirty days' grace should be allowed, counting from the first day of January of the year in which

the payment should be made. The corporation was organized, and the rental for the first year, which was due January 1, 1873, was duly paid. In November, or December, 1873, the government which had granted the charter was overthrown by a revolutionary army under G., and a provisional government was established. In the latter part of December, 1873, G. was elected President, and on April 6, 1874, took the oath of office, but he acted as President, and was, in fact, the supreme executive of the republic from the beginning of December, and was recognized as such by the citizens. From December into March, the corporation had various communications and dealings with the G. government, which it also recognized as the government of the republic. More than the thirty days of grace allowed by the charter in case of war had elapsed; and, on March 25, 1874, the G. government made a decree, reciting the stipulation for rent in the charter, the dealings between the corporation and the present government, and the default on the part of the corporation; and declared that the agreement entered into between the Dominican government and the corporation for the renting of the peninsula and bay of Samana "is, and is declared from this date to be, in virtue of that agreement itself, rescinded in all its parts, and null, and of no value or effect." The decree also provided that "the company shall make good the amount for reëxchange for the drafts protested through its default, and the proportionate amount of the rent which is due from the first of January to the date of this decree." The corporation was thereupon forcibly ejected from the territory which it had occupied, and has never since had any possession or control of the property which had been possessed and occupied by it before under the grant; and the corporation has never since been recognized by the Dominican government as a corporation under its laws. A consul appointed by the G. government was recognized by the United States government on July 18, 1874. A creditor of the corporation brought an action against it in the State of New York on April 8, 1874, in which judgment was rendered against the corporation on January 14, 1875. *Held,* in an action by the creditor to enforce the liability of a stockholder of the corporation, that the corporation was dissolved by the decree of the G. government of March 25, 1874; and that the judgment against the corporation was void for want of jurisdiction.

HOLMES, J.   This is a bill in equity, alleging that the plaintiff, a corporation established under the laws of the State of New York, has recovered a judgment against the Samana Bay Company, on which execution has issued and has been returned unsatisfied; and seeking to compel the executors of Oliver Ames, who was a stockholder in the company, to pay over the sum of $3500 in partial satisfaction of that judgment, the sum mentioned being the amount remaining unpaid upon Ames's subscription for stock.   The bill alleges that the company is insolvent, but that there are no other stockholders or creditors residing in this Commonwealth.   It does not purport to be brought on behalf of such creditors as may choose to join, nor does it make other stockholders parties.   The company is made a nominal party, but there has been no service upon it, and could not be for reasons

that will appear. A demurrer by the executors was overruled by Chief Justice Gray, and the case was sent to a master. It is now before us on appeal from the decree overruling the demurrer, and on the master's report.

We are of opinion that the bill cannot be maintained without proof that the plaintiff has recovered a valid judgment against the corporation; and that he cannot resort to his original claim against the company in case that judgment appears to be void. And, as we are of opinion, upon the facts disclosed by the report, that the judgment was void because the corporation had been dissolved and had ceased to exist for any purpose before the judgment was rendered, it will be unnecessary to discuss the questions raised by the demurrer. We proceed, therefore, to consider the case upon the facts, and to give our reasons for the opinion to which we have come.

The liability sought to be enforced is a liability through the corporation, not a direct liability of the stockholder to the creditor, and cannot be carried beyond the limit set by the charter. See *Patterson* v. *Lynde*, 106 U. S. 519.

The charter, which was granted by the Dominican republic, provides that no subscriber to the capital shall be individually liable for any debt or liability of the company beyond the par value of the stock subscribed by him, and that no holder of stock in the company shall be proceeded against for the collection of any debt of the company, until judgment thereon shall have been obtained against the company, and an execution on such judgment shall have been returned unsatisfied.

It will be seen that a judgment against the company is thus made a condition precedent to a creditor's right to call on stockholders for payment of their unpaid subscriptions, in satisfaction of the company's debt; and we think it very plain that this is not a mere local rule of procedure, but a limitation of the substantive rights and liabilities of creditors and stockholders of the company respectively. It is not like the case where there is a partnership, the members of which are parties to the contract, as in *Boston & Albany Railroad* v. *Pearson*, 128 Mass. 445.

Of course, it may be argued that this charter is drawn with a view to American law; that the unpaid subscriptions of stockholders are a trust fund for creditors; and that there is an

implied exception to the universality of the condition precedent to coming upon that fund in cases where the law makes performance of the condition impossible ; and therefore, that, if the company was dissolved by an arbitrary act before judgment was obtained against it, the bill may be maintained upon the original claim.

But, if this charter were to be read as adopting American law beyond the extent to which it does so in express words, we should have to assume that law to be as declared by the decisions of this Commonwealth. In *Thornton* v. *Marginal Freight Railway*, 123 Mass. 32, it was held, on demurrer, that a bill by a creditor to reach and apply a claim of a corporation for damages could not be maintained, when it appeared on the face of the bill that the corporation had been dissolved before the judgment alleged in the bill was rendered against it. It was held that the Gen. Sts. *c.* 113, § 2, (Pub. Sts. *c.* 151, § 2, *cl.* 11,) did not apply, and it was said that "a court of equity has no general jurisdiction of a bill by a single creditor, who has not recovered a valid judgment against his debtor, and whose debtor has ceased to exist, to apply, to the payment of his debt, property of the debtor in the hands of a third party." The language cited is not strictly a decision that the bill could not be maintained on the original claim, if amended so as to set it forth. But as the court not only sustained the demurrer, but ordered the bill to be dismissed, it goes very far toward deciding the question for this State. Clearly, the requirement that the creditor shall recover a judgment before assessing a stockholder stands on at least as strong, if not on stronger ground.

But, supposing the general question to be open, we think that peculiar caution is necessary in dealing with the act of a foreign government, in whose jurisdiction our system of law does not prevail. There is nothing in the charter which can be construed to import our law into the provision concerning the liability of stockholders. The language under consideration limits the existence of the supposed trust fund for creditors to the extent to which it goes, just as it might have declared that there should be no such fund, and no liability of stockholders to pay up anything, had the Dominican government seen fit. That language is in terms universal. We do not feel at liberty to read into it an exception based on our peculiar conceptions of equity.

The bill adopts the view which we have taken, and proceeds solely on the ground that a judgment has been recovered. If this view be correct, it does not matter whether the bill is brought under the Pub. Sts. *c.* 151, § 2, *cl.* 11, or under the general equity jurisdiction of the court, because the recovery of a judgment is essential to the plaintiff's right and to the defendant's liability, and the requirement cannot be affected by the nature of the proceeding adopted. We may say, however, that the bill is framed under the general jurisdiction; and that, in our opinion, it could not be maintained under the statute, consistently with principle or the decision in *Thornton* v. *Marginal Freight Railway.*

It remains to consider whether the allegation of a judgment is maintained. The defendants say that, before the judgment relied on was rendered, and even before the suit was brought, the company had been dissolved; and therefore that the whole proceedings were void. The plaintiff says that nothing has been done which we can recognize as an act of the Dominican republic; and that what was done did not purport to dissolve the corporation.

The charter constituted a portion of a document styled " Convention for the Lease of the Peninsula and Bay of Samana, and for other purposes." By Article 10, " These grants, franchises, rights, privileges, and immunities shall become operative on the first day of January, 1873, and shall continue to be in full force for ninety-nine years thereafter, . . . . upon condition that the company, its successors or assigns, shall pay or cause to be paid to the Dominican government the sum of one hundred and fifty thousand dollars in American gold, annually, in advance," on the first day of January of each year. By Article 11, " This convention . . . . may be declared null and void by the government of the said republic whenever the Samana Bay Company . . . . shall fail to fulfil the conditions established in Article 10, except in case of war or of other controlling circumstance duly attested, when thirty days' grace shall be allowed, counting from the first day of January of the year in which the payment should be made."

The company was organized, and the rental for the first year, which was due January 1, 1873, was duly paid.

In November or December, 1873, the government which had granted the charter or convention was overthrown by a revolutionary army under General Gonzales, and a provisional government was established. In the latter part of December, 1873, Gonzales was elected President, and on April 6, 1874, took the oath of office, but he acted as President, and was in fact the supreme executive of the republic, from the beginning of December, and was recognized as such by the citizens.

The master finds that the Gonzales government was officially recognized by the United States on June 17, 1874. This date seems to have reference to a letter of President Grant, in reply to one of Gonzales announcing his election and having taken possession of the office, in which the President tenders his congratulations and offers his good wishes. It is unnecessary to consider the correctness of this date, which was after the New York action was brought in which judgment was recovered, as we are of opinion that the recognition imported by a recognition of a consul in New York appointed by the Gonzales government, which took place on July 18, 1874, coupled with the other facts to which we shall advert, is sufficient to warrant us in assuming, for the purposes of this case, that the act relied on by the defendants was an act of the Dominican government.

From December into March, the Samana Bay Company had various communications and dealings with the Gonzales government, which it also recognized as the government of the republic. Especially it made efforts to obtain a reduction of rent. The effort was unsuccessful. More than the thirty days of grace allowed by the charter in case of war had elapsed, if there was any claim to them, and on March 25, 1874, (before the New York action was brought,) the Gonzales government made the decree relied on by the defendants as dissolving the company. This decree recites the stipulation for rent in "article 10 of the contract for rent of the peninsula and bay of Samana and its cays," the dealings between the company and the present government, and the default on the part of the company, and then decrees as follows: "Article 1. The agreement entered into in this city on the date of December 28, 1872, between the Dominican government and the company entitled the Samana Bay Company of Santo Domingo, for the renting of the peninsula

and bay of Samana, and the islands and cays which are found in its waters, is, and is declared from this date to be, in virtue of that agreement itself, rescinded in all its parts, and null, and of no value or effect."

We are of opinion that the purport of these words was, not merely to terminate so much of the convention as made a lease to the company which was called into being by another article of the same agreement, but to end each and every part of it, including that which operated as a charter to the company. We should read the words, taken by themselves, as intended to designate the whole agreement, although they select the most conspicuous feature only, the lease, as the means of identifying it. The preamble, when referring to the whole agreement, designates it in substantially the same way, as we have shown. The words "rescinded in all its parts" naturally convey a reference to all the parts of an instrument, and not merely to all the parts of certain particular agreements to be picked out of a more extensive instrument by construction.

The instrument referred to confirms the opinion drawn from the decree. It is called "Convention for the lease," &c., as in the decree, and the condition in articles 10 and 11, which the decree purports to enforce, goes to all the rights and franchises conferred by the convention, and to the convention itself, as has been shown earlier in our opinion.

What seems to us the meaning of the words of rescission is not cut down by the provision in article 3, that "the company shall make good the amount for reëxchange for the drafts protested through its default, and the proportionate amount of the rent which is due from the first of January to the date of this decree." This seems to us simply intended as a declaration that the government does not mean to abandon the rights which it may have as creditor of a dissolved corporation, and to define the extent of its claim.

Our construction is confirmed by a fact which seems to us of importance also on the other question, as to whether the decree can be recognized as a decree of the Dominican government.

The master finds that the Samana Bay Company was thereupon forcibly ejected from the territory which it had occupied, and has never since had any possession or control of the property

which had been possessed and occupied by it before, under the grant; and that the company has never since been recognized by the Dominican government as a corporation under its laws. If the Dominican government deals with the words of Gonzales, upon a matter wholly within its power, as having had a certain scope and meaning, that is a strong, if not a conclusive, reason for our giving them the same construction. And, if the Dominican government deals with the decree as effectual to accomplish all that it says the decree purported to accomplish, how can we deny it that effect, whether the government of Gonzales was ever recognized diplomatically by the United States or not? Would it not be a most extraordinary spectacle, if, when a *de facto* government, recognized as a *de facto* government by the United States, had made a decree dissolving a corporation, and its decree had been accepted as valid by all succeeding governments of the country having exclusive power and jurisdiction over the matter, the courts of another State should undertake to assert that the corporation existed under the laws of that country, in spite of their repudiation and denial? Suppose the Gonzales government had not been recognized for any purpose by the United States, yet when its act in this purely and exclusively domestic matter is recognized by subsequent governments which are recognized by the United States, could we deny its validity or effect? It would be a false semblance of justice for courts of other jurisdictions to undertake to look behind the fictitious entity of a corporation for the purpose of affecting the liability of its members. It is true that the existence of a corporation is a fiction, but the very meaning of that fiction is that the liability of its members shall be determined as if the fiction were the truth. That fiction or artificial creation is wholly within the power of its creator, and persons who deal with it must be taken to understand that it is so.

Under the circumstances which we have set forth, we think that, without going into nicer detail, we must now assume the Gonzales decree to have dissolved the Samana Bay Company at the time when it purported to do so. This was on March 25, 1874. The New York action was not brought until April 8 of the same year. We may add, that the judgment was not rendered until January 14, 1875, long after the recognition of the consul sent

by Gonzales.   It follows, that the judgment on which this suit
is founded was void for want of jurisdiction.   Upon our view of
the facts, the case presented on the demurrer is not the actual
case between the parties.   In some respects the argument for
maintaining the bill is strengthened, and in some respects it is
weakened, by the impossibility of either obtaining a judgment,
or making the corporation a party.   Compare *Vose* v. *Grant*, 15
Mass. 505, 522, and *Terry* v. *Anderson*, 95 U. S. 628, with *Thorn-
ton* v. *Marginal Freight Railway*, *ubi supra.*   But we are pre-
cluded from considering that argument, if it is not answered by
the last cited case, by our construction of the charter.

*Bill dismissed.*

*J. H. Benton, Jr.*, for the defendants.
*H. J. Fuller*, for the plaintiff.

