# CHARLESTON.

BRUNNER *et als.* v. YORK BRIDGE COMPANY *et als.*

Submitted September 19, 1916.    Decided September 26, 1916.

1. CORPORATIONS—*Foreign Corporations—Ancillary Receivers.*

   Non resident creditors of an insolvent foreign corporation being interested therein may maintain a suit in the courts of this state to obtain the appointment of an ancillary receiver of the assets of the corporation located here, and for the sequestration thereof for the benefit of all creditors.   (p. 703).

2. SAME—*Corporate Creditors—Local Creditors.*

   Resident general creditors of such defunct corporation not having previously obtained liens upon its property are not entitled to any priority or preference over non resident creditors in the distribution of the funds derived from such assets by the local or ancillary receiver; all creditors of such corporation of the same class are on principles of equity entitled to share ratably in the distribution of the whole estate of such corporation, regardless of their places of residence.   (p. 705).

3. SAME—*Foreign Corporations—Local Creditors.*

   But the courts of the local or ancillary jurisdiction should before allowing a domiciliary receiver or other representative of such corporation to withdraw the funds sequestrated there protect the resident domestic creditors out of such funds or otherwise to the extent of their distributive shares in the whole estate of the insolvent corporation.   (p. 705).

Appeal from Circuit Court, Harrison County.

Suit by E. E. Brunner and others against the York Bridge Company, in which the local creditors of the defendant intervened.  From the decree, plaintiffs appeal.

*Reversed and remanded.*

*Taney Harrison,* for appellants.

*Osman E. Swartz* and *E. Bryan Templeman,* for appellees.

MILLER, JUDGE:

The defendant company is a foreign corporation, organized under the laws of the State of Pennsylvania, with its chief works and place of business at the City of York, in that State.

Becoming insolvent the plaintiffs upon a bill filed in the courts of that State obtained the appointment of special receivers of the property and assets of said company, and thereafter by this suit sought and obtained the appointment of an ancillary special receiver of certain property and assets of the corporation located in Harrison County, in this State.

As a result of the ancillary receivership a net balance of four thousand two hundred and thirty two dollars and thirty six cents remained for distribution to creditors of the insolvent corporation.

The local West Virginia creditors of said company intervened in this suit, and as such claimed right of priority and preference as against the non resident creditors, one of whom, the York National Bank, also intervened by petition and sought a decree against the defendant company for its debt, and prayed that it might be decreed its pro rata share of said assets without discrimination in favor of the West Virginia creditors, on account of the location of its principal place of business.

By the decree appealed from the circuit court adjudged that the net amount in the hands of its receiver should be distributed first to the payment and discharge in full of the claims of the resident West Virginia creditors, and that the residue, if any, should be paid over to the domiciliary receivers appointed by the court in Pennsylvania. From this decree the York National Bank, the intervening creditor, applied for and obtained this appeal. The Union National Bank, of Clarksburg, West Virginia, the principal West Virginia creditor, and to whom was decreed the sum of twenty six hundred and eighty dollars out of said fund, is the only one of the appellees who has appeared to defend in this court.

The right of creditors to maintain this suit is challenged by counsel for the Union National Bank. It is argued that only the special receivers can maintain a suit to recover the assets of the insolvent corporation. The general proposition contended for and for which counsel cite numerous decisions is not controverted; but we see little application of this proposition to the matters involved. In the first place this is not primarily a suit by creditors to recover the assets of the in-

solvent corporation. The main effect. of the bill was accomplished by the decree appointing the ancillary receiver, who was authorized and has recovered the assets and brought them into court for distribution. Certainly it will not be seriously contended that creditors may not maintain a suit for that purpose. And as applied to the petition of the York National Bank, intervening to protect its interest, and to obtain its ratable share of these local assets, and for general relief, the proposition has little, if any, application. Certainly this bank is interested in the fund to be distributed and has right to intervene to protect its interests and to see to it that the fund is not wasted or disbursed to its detriment. The prayer of its petition is that it may be decreed its ratable share, without discrimination in favor of local creditors, and for general. relief.

Numerous propositions are advanced by counsel more or less pertinent to the issues involved, but it is conceded that the real and controlling question decisive of all others, and the only one which we need consider, is, have the local resident creditors of the insolvent corporation any right to priority of payment, to the exclusion of non resident creditors, out of the funds derived from the assets in this State? If they have, the decree is right; if not, it is concededly wrong and should be reversed.

Counsel for the Union National Bank admit that the principle of law for which they contend can be supported and justified upon but one ground, namely, the right of a state as a sovereign power to exercise its sovereignty for the benefit and protection of citizens within its borders. They cite as instances of the exercise of this power, the denial to foreign receivers of the privilege of removing out of the State assets of an insolvent corporation without payment of the debt of resident creditors; the denial to foreign corporations of the privileges of doing business in the State, except upon terms provided for the protection of citizens of the State; and the provisions of our statutes relating to the removal from the State by foreign fiduciaries of trust funds, to the detriment of citizens of the State.

We deem it unnecessary to follow learned counsel in the

elaborate discussion pertaining to the sovereign powers of the states, and the instances given of their exercise by the states. The question we have to decide is, can one state, or the courts thereof, in the exercise of any power not denied them by the federal constitution prefer its own citizens or residents as decreed in this case? By the federal constitution one state is not permitted to deny to the citizens or residents of another state, coming within its jurisdiction the equal protection of the laws, or to withhold from them those privileges and immunities which are guaranteed to them by the federal constitution, or to deprive them of their property without due process of law.

It is conceded that we have no statute giving to local or resident creditors priority or preference in the distribution of the assets of a foreign corporation located here; but it is argued that we have a public policy to that effect analogous to the provisions of chapter 84, of our Code, relating to the transfer of trust funds by a foreign fiduciary, which as fully protects domestic creditors, and which the courts are bound to enforce.

We know of no public policy of this State evidenced by statute or judicial decisions going to the extent affirmed by counsel. We do have chapter 84, of the Code, prohibiting the transfer of trust funds to a foreign fiduciary to the prejudice of interested persons, and we have decisions, notably *Grogan* v. *Egbert*, 44 W. Va. 75, and *Billmyer Lumber Co.* v. *Merchants Coal Co.*, 66 W. Va. 696, 702, to the effect that foreign receivers will not be allowed to remove assets of a foreign corporation to the detriment of resident persons, or compel local creditors to go into a foreign jurisdiction to collect their debts; but neither the statute nor the decisions evince a public policy to contravene the provision of the federal constitution, by undertaking to give resident creditors as a class priority and preference in the distribution of such assets, further than to protect them in their right to be paid their equal and ratable shares based on the total assets of the foreign corporation, out of the assets in the hands of local representatives, without having to go outside the State to collect their debts. We have examined the numerous decisions cited from other states, and

find that few, if any, of them go to the extent contended by counsel. Dicta may be found in some of them giving color to the views of counsel, but in but few instances was this the exact point of decision.

But say we had a statute or a public policy going to the limit claimed, neither could prevail against the provisions of the federal constitution referred to as interpreted by our highest federal tribunal, the Supreme Court of the United States. That court distinctly held that a statute of Tennessee, which undertook to so prefer resident creditors of a foreign corporation doing business there, was unconstitutional, void and unenforcible. *Blake* v. *McClung,* 172 U. S. 239, re-affirmed upon a second appeal in 176 U. S. 59. One of the points of the syllabus embodying the point of decision in the first case is: "It is not in the power of one State, when establishing regulations for the conduct of private business of a particular kind, to give its own citizens essential privileges, connected with that business, which it denies to citizens of other States." And again: "When the general property and assets of a private corporation, lawfully doing business in a State, are in course of administration by the courts of said State, creditors who are citizens of other States are entitled, under the Constitution of the United States, to stand upon the same plane with creditors of like class who are citizens of such State, and cannot be denied equality of right simply because they do not reside in that State, but are citizens residing in other States of the Union." In accordance with these federal decisions are *People* v. *Granite State Provident Assn.,* 161 N. Y. 492, 55 N. E. 1053, 1054; *Wilson* v. *Keels,* (S. C.) 32 S. E. 702, 706, 71 Am. St. Rep. 816. See, also, 5 Pom. Eq. Jur., section 261; 19 Cyc. 1284; 2 Cook on Corporations, (7th ed.) 1986. As was said by the South Carolina court in *Wilson* v. *Keels, supra,* construing a statute of that state: "There is no doubt that it is the duty of the courts of this state to protect the interests and rights of domestic creditors concerning assets of a foreign corporation in this state, but there is a vast difference between protecting domestic creditors and sequestrating to them exclusively assets which ought, in justice and right, be administered for the benefit of all creditors.

If so construed as to exclude non-resident citizens who are creditors from participating in the assets in this state of a foreign corporation, a grave question as to the constitutionality of the act might be raised." Citing *Blake* v. *McClung, supra.*

Of course if resident creditors have obtained valid liens by attachment or otherwise upon the property and assets of such foreign corporation the courts of the state upon the principles enunciated would have the right and would be bound to protect its citizens and residents in those rights before allowing the assets to be withdrawn from the state by the representatives of the domiciliary administration; but respecting general creditors having no such specific liens, they could not properly be decreed any priority in the distribution of assets in the hands of an ancillary receiver, or other representative. In *People* v. *Granite State Provident Assn., supra,* the New York court put the representative of the domiciliary administration upon terms of securing the New York creditors in their distributive shares by a bond. We think the court should be conceded a discretion in the manner of protecting the local creditors in their rights, according to the circumstances of each individual case. The funds might be retained until the proportionate shares of the local creditors have been ascertained and these shares decreed and paid out of the local assets before transferring the funds to the domiciliary administration, or their rights protected in some other manner best suited to the circumstances of the individual case.

Our conclusion is to reverse the decree, and remand the cause to the circuit court to be therein further proceeded with in accordance herewith and further according to rules and principles governing courts of equity.

*Reversed and remanded.*