MIEYR, Respondent, *v.* FEDERAL SURETY COMPANY OF DAVENPORT et al., Respondents; WILLIARD et al., Appellants.

(No. 7,074.)

(Submitted February 1, 1933. Decided April 1, 1933.)

[23 Pac. (2d) 959.]

*Mr. Louis P. Donovan* and *Messrs. Belden & DeKalb,* for Appellants, submitted an original and a reply brief and argued the cause orally.

*Messrs. Cook & Balluff,* of the Bar of Davenport, Iowa, and *Messrs. Gunn, Rasch, Hall & Gunn,* for Respondents Federal Surety Company and E. W. Clark, Receiver, submitted an

510

original and a supplemental brief; *Mr. R. B. Cook* and *Mr. E. M. Hall* argued the cause orally.

512

*Messrs. Molumby, Busha & Greenan,* for Respondents John Mieyr and D. A. Crichton, Ancillary Receiver, submitted a brief; *Mr. L. J. Molumby* argued the cause orally.

## Opinion: PER CURIAM.

Defendant Federal Surety Company prior to September 25, 1931, was a corporation organized under the laws of Iowa and authorized to do business in Montana. The district court of Scott county, Iowa, in a proceeding brought by the Attorney General of that state, under statutory authority made an order on September 21, 1931, requiring the surety company to appear on September 25 and show cause why its affairs and business should not be dissolved and a receiver appointed to wind up its affairs and distribute its effects as provided by law. The order was served on the surety company, and it failed to appear. The court thereupon entered a decree "that

under and in accordance with the provisions of section 8964 of the Code of 1927 of the state of Iowa, the defendant, Federal Surety Company, shall be dissolved, and its effects distributed." The decree also appointed E. W. Clark, commissioner of insurance of the state of Iowa, as receiver, gave him certain directions with respect to the property and the method of ascertaining and determining claims, and expressly retained jurisdiction, upon application of any party in interest, to give further orders, directions or decrees as may be necessary or proper. Clark duly qualified as receiver by filing bond and oath.

On December 22, 1931, the court, on application of the receiver, made a supplemental order and decree which recites that the court "finds, determines and adjudges: That pursuant to the power conferred by said sections, pursuant to the allegations set forth in the petition filed herein, as amended, and pursuant to good cause shown herein, as in said sections provided, this court did, on September 25, 1931, enter an order and decree in this cause, and thereby dissolved Federal Surety Company and terminated its corporate existence, and thereby appointed E. W. Clark, who was and is commissioner of insurance of the state of Iowa, as the receiver and/or liquidating officer, to take title to all property of the dissolved corporation for the purpose of liquidating and distributing its assets, as by law provided. That by virtue of the statutes hereinbefore referred to, as construed by the court of last resort in the state of Iowa, and by virtue of the proceedings in this cause, the said corporation Federal Surety Company, ceased to exist upon the entry of the order and decree herein at 4:30 P. M., Central Standard Time, September 25, 1931, and that thereupon all its agencies ended, its employees, including attorneys, were discharged, and it was put, without exception or notice of appeal, beyond all further corporate activity, its existence was put to an end for all purposes whatsoever, so that it can neither make nor take contracts, nor sue or be sued, and so that all debts to or from it became extinguished and all actions by and against it abated, and so that, as after death of a natural

person, it can have no interest in the property theretofore by it controlled. That the defendant, Federal Surety Company, is, and since September 25, 1931, has been dissolved, and that its corporate existence is terminated, with the results hereinbefore determined. That E. W. Clark, receiver and/or liquidating officer of Federal Surety Company, is the successor to said corporation and as such holds title to all property owned by Federal Surety Company at the time it so ceased to exist.''

On March 25, 1932, this action was commenced by Mieyr against the surety company and the receiver, Clark, in Cascade county, the complaint alleging a debt due plaintiff from the surety company, growing out of a policy of insurance for loss occasioned by reason of the ownership, maintenance, use and operation of a certain automobile. Mieyr in his complaint pleaded the decree of the Iowa court dissolving the corporation and appointing a receiver, and the Iowa laws authorizing the proceedings taken in the Iowa court. He alleged that the surety company had more than $50,000 worth of property situated in Montana, consisting of cash and a judgment in favor of the surety company; that Clark, the receiver, through agents and representatives in this state, is attempting to compromise, settle and discount the assets and procure possession thereof and remove them from the state, and that, unless a receiver is appointed in this state to take charge of and preserve the property for the Montana creditors, the same would be dissipated and lost to the creditors; that the funds should be retained in Montana until the proportionate shares of the Montana creditors are ascertained and determined and these paid out of the Montana assets before transferring any of the funds to the Iowa receiver. The complaint asked for the appointment of D. A. Crichton as receiver to take charge of the Montana assets and to hold the same until the further order of the court. It prayed also that plaintiff be decreed to have a valid claim against the surety company.

On the day the complaint was filed, the court appointed Crichton as receiver for the Montana property, the order

reciting "that the receiver be vested with all the powers and rights of receivers appointed by this court, and with the power to take possession of all property heretofore belonging to said Federal Surety Company of Davenport, Iowa, and to collect all sums owing said Federal Surety Company of Davenport, Iowa, and to keep and preserve the same, and manage and disburse the same, according to the further order of this court."

Crichton duly qualified as such receiver on March 26. Clark thereafter moved the court to discharge Crichton as receiver for want of jurisdiction in the court to make the appointment. This motion was denied on May 24, 1932.

On May 20, 1932, Harry P. Williard, W. W. Wheaton, and C. W. Hay, as trustees of Gordon Campbell-Kevin Syndicate, a common-law trust, and Gordon Campbell Syndicate, appellants here, obtained a judgment against the surety company in the Fergus county district court for approximately $15,000 without knowledge of the receivership proceedings in Iowa. This was after a second trial. The first resulted in a nonsuit, which judgment was reversed by this court in 91 Mont. 465, 8 Pac. (2d) 633. On May 24 these appellants appeared in this action in Cascade county by petition setting forth that they had discovered assets of the surety company within the state and had executions issued out of the district court of Fergus county upon their judgment, and requested an order permitting them to levy the execution upon such property in Montana. The request was granted with the understanding, announced by the court, that no preference over other Montana creditors was given them. On July 25 Crichton filed his petition to annul the order permitting the levy of execution, and gave notice that it would be heard on August 3.

On August 3 Clark served and filed an answer and cross-petition in this action. In substance, it set forth his appointment as receiver by the Iowa court, and pleaded the Iowa statutes authorizing the proceedings there taken; that creditors of the surety company reside in different jurisdictions and its assets are located in such jurisdictions; that there were assets

in Montana amounting to $50,000; and that certain creditors were threatening suits against such property and issuing attachments; and that an ancillary receiver should be appointed to prevent irreparable damage and preferential treatment of some creditors over others. It prayed for an order confirming title to the assets of the surety company in Clark and confirming the appointment of Crichton as ancillary receiver of the Montana property, with authority to care for and preserve it until the further order of the court. Mieyr filed an instrument admitting the allegations of the answer and cross-petition of Clark, and joining in the request therein made.

On August 25 the court entered an order or decree finding that the corporate existence of Federal Surety Company was terminated by the proceedings in Iowa, and that title to all its property passed to Clark, as receiver, and should be distributed ratably to all creditors "subject to any liens and rights of creditors acquired on or prior to September 25, 1931, in or to specific property." It confirmed the appointment of Crichton as ancillary receiver, and directed that he receive proof of claims of all Montana creditors by requiring the claims to be filed with the clerk of court in Cascade county, and provided that, when the claims allowed by order of the district court of Cascade county were allowed by the court in Iowa as entitled to share with other claims of similar rank, Crichton should transmit and remit to Clark all money and property in his hands as receiver, except such as were determined by the Cascade county court to be subject to specific liens, and such as was necessary to pay the costs of the proceedings in Montana, including the compensation of Crichton. It also provided that, in the event claims allowed by the district court of Cascade county were not allowed in such manner as to permit claimants to share ratably with all other creditors of the surety company, then the money and property in the hands of Crichton should be retained by Crichton for distribution to creditors whose claims are allowed by order of the Cascade district court. The decree directed all persons to deliver to Crichton all money and property belonging to the

surety company. It also revoked the order of May 24, 1932, granting permission to appellants to levy their execution. This appeal is from that decree or judgment, and from an order made thereafter denying appellants' motion to vacate or modify the decree.

The appeal presents the question whether appellants have the right to be paid the amount of their claim from the Montana property before any part of such property is transmitted to the Iowa receiver for administration through the Iowa receivership, when, as shown, their claim has been reduced to judgment and execution levied after the proceedings in the Iowa court designed to accomplish the dissolution of the corporation. Solution of the problem presented makes it necessary to determine the effect of the proceedings in the Iowa court upon the corporate life of the surety company.

The proceedings in Iowa were taken under section 8964 of the Iowa Codes of 1927 and 1931, which authorizes the commissioner of insurance to examine into the condition of corporations incorporated or doing business in that state. It then provides that when, upon such examination, he finds a stated condition, ''he shall communicate the fact to the attorney general, who shall apply to the district court * * * for an order requiring the company to show cause why its business shall not be dissolved. The court or judge, as the case may be, shall thereupon proceed to hear the allegations and proofs of the respective parties; and in case it appears to its or his satisfaction that the assets and funds of said company are not sufficient, as aforesaid, or that the interest of the public requires it, it or he shall decree a dissolution of said company and a distribution of its effects, and appoint a receiver therefor.''

The Iowa supreme court has had occasion to pass upon the effect of proceedings under this statute, in the case of *State ex rel. Attorney General* v. *Fidelity Loan & Trust Co.*, 113 Iowa, 439, 85 N. W. 638. The court in that case held that, while the corporation had the right of appeal from a decree of dissolution, if the decree was acquiesced in and not appealed

from, it became final, and that "from the time of that entry the corporation has been dead, all its agencies ended, its employees, including attorneys, discharged; and it put, without exception or notice of appeal, beyond all future corporate activity. The effect was to 'put an end to its existence for all purposes whatsoever, and to destroy every one of its faculties, so that thereafter it can neither make nor take contracts, nor sue nor be sued, and so that all debts to or from it became extinguished, and all actions by and against it abated.' * * * To a corporation dissolution is as final as death to a person." This is the prevailing rule elsewhere. (8 Fletcher, Ency. Corp., sec. 5564, note 41, and cases there cited.)

Appellants contend that the order or decree of the Iowa court rendered on September 25, 1931, because of its wording, did not terminate the existence of the surety company, but simply adjudged that at some future time it would be dissolved. From the record it appears that Clark was first appointed temporary receiver on September 11, and thereafter, upon the filing of amendments to the petition in the Iowa court, an order was made directing the surety company to show cause "why its business should not be forthwith dissolved and a receiver appointed to wind up its affairs." The decree that followed adjudged "that under and in accordance with the provisions of section 8964, of the Code of 1927, of the state of Iowa, the defendant, Surety Company, shall be dissolved and its effects distributed."

[Conceding that the decree of the Iowa court resulted in a present dissolution of the surety company, the question arises: Did the action brought by the appellants abate?]

The following provision is found in section 6013, Revised Codes of 1921: "Nor does the dissolution of any such corporation take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred." This portion of the section has not been construed by this court. Colorado has substantially the same legislative enactment. (Compiled Laws of Colorado, 1921, sec. 2300.) Likewise the state of Illinois.

(Sec. 14, Chapter 32, Smith-Hurd Rev. Stats. 1931.) The similar provisions noted have been construed by the supreme court of each of these states. The supreme court of Colorado, in the case of *Kipp* v. *Miller,* 47 Colo. 598, 108 Pac. 164, 165, 135 Am. St. Rep. 236, construing their statute, said: "The question is, can the suit be maintained against the bank, it having been instituted after the expiration of the bank's charter? We answer in the affirmative, since the cause of action arose while the charter was still in force and the bank a going concern. The dissolution of the bank did not deprive creditors of a remedy against it, although sought to be applied after that time. The right of action by the creditor is clear and undisputed, and the remedy is preserved to him by express statute. Section 508, Mills' Ann. St., reads as follows: "The dissolution for any cause whatever of corporations created as aforesaid, shall not take away or impair any remedy given against such corporations, its stockholders, or officers, for any liabilities incurred previous to its dissolution." That court reached the same result in the following cases construing the same statute: *Steinhauer* v. *Colmar,* 11 Colo. App. 494, 55 Pac. 291, 293; *Lucifer Coal Co.* v. *Buster,* 64 Colo. 179, 171 Pac. 61; *Dutton Hotel Co.* v. *Fitzpatrick,* 69 Colo. 229, 193 Pac. 549. The same result was reached by the circuit court of appeals for the eighth circuit construing the Colorado statute. (*Hazard* v. *Park,* 294 Fed. 40.)

The supreme court of Illinois, in the case of *Singer & Talcott Stone Co.* v. *Hutchinson,* 176 Ill. 48, 51 N. E. 622, 623, construing the statute of that state, speaking with reference to a dissolved corporation, said: "These sections, therefore, continued its life, for the respective periods stated, as an entity, so that it could sue or be sued as a party to the action; and therefore its rights, as such party, are conserved the same as the rights of other parties to actions."

Clearly, if the action of appellants were held to have abated upon the entry of a decree of dissolution by the Iowa court, their remedy, which accrued long prior thereto, would be impaired. "Impaired" means to make worse, to lessen the

power, to weaken, to enfeeble, to deteriorate. (*Ex parte Harrison*, 212 Mo. 88, 110 S. W. 709, 126 Am. St. Rep. 557, 15 Ann. Cas. 1, 16 L. R. A. (n. s.) 950.) The action, if against a domestic corporation, would not abate; and, as we shall presently see, the same rule is applicable to a foreign corporation.

The question of continuing actions by or against a corporation after its dissolution depends upon the laws of the state in which the action is pending, and a foreign statute relating thereto is of no avail. (1 C. J. 137; *Sturges* v. *Vanderbilt*, 73 N. Y. 384; *Sinnott* v. *Hanan*, 156 App. Div. 323, 141 N. Y. Supp. 505.)

Section 11 of Article XV of our Constitution provides: "And no company or corporation formed under the laws of any other country, state or territory, shall have, or be allowed to exercise, or enjoy within this state any greater rights or privileges than those possessed or enjoyed by corporations of the same or similar character created under the laws of the state."

Our legislature in 1917 enacted Chapter 149, now section 6659, Revised Codes 1921, as follows: "All foreign corporations licensed to do business in the state of Montana shall be subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the laws of this state, and shall have no other or greater powers." Under the quoted section, when the surety company was licensed to do business in the state of Montana, it became subject to the liabilities and restrictions then imposed upon corporations of like character organized under the laws of this state. Suits against domestic corporations do not abate upon the entry of a decree of dissolution, and the same rule, by virtue of this statutory provision, must apply to a foreign corporation.

It is frequently said by the text-writers and in decisions that the laws of the forum continuing the life of a corporation will not be extended to a foreign corporation dissolved under the laws of the state of its domicile. (8 Thompson on Cor-

porations, sec. 6518.) But these statements all relate to statutes enacted with reference to the survival of domestic corporations after dissolution for purposes of suit. However, an examination of these authorities reveals the fact that no statute, either identical with or similar to section 6659, Revised Codes of 1921, was under consideration.

Many authorities are found in the books to the effect that a personal judgment cannot be obtained against a dissolved corporation, which is a correct statement of what might be termed the common-law rule. Substantially all the states now have survival statutes which enable actions to be maintained and judgments rendered against domestic corporations subsequent to dissolution, as is disclosed by the elaborate note in 47 A. L. R. 1397 et seq., wherein the statutory provisions and decisions of the respective states are collated.

We have searched in vain to find either of these rules applied in any jurisdiction having a statute similar to our own, above noted. Therefore we hold that the suit of appellants against the surety company did not abate on the entry of the decree of dissolution in Iowa, and that the judgment entered herein is good and valid.

It then remains to determine whether the levy of the execution was valid. Solution of this question depends upon the effect of the order appointing Crichton receiver. Appellants contend that this appointment was a nullity, because the complaint of Mieyr is not sufficient upon which to base the appointment of a receiver in this state. They assert that a receiver will not be appointed at the instance of a general contract creditor.

A general creditor of a corporation has no right to the appointment of a receiver. (*Scholefield* v. *Merrill Mortuaries*, 93 Mont. 192, 17 Pac. (2d) 1081; Pomeroy's Equity Jurisprudence, 4th ed., sec. 1548, p. 3630; *Hollins* v. *Brierfield Coal & Iron Co.*, 150 U. S. 371, 14 Sup. Ct. 127, 37 L. Ed. 1113; *French Bank Case*, 53 Cal. 495; *Smith* v. *Superior Court*, 97 Cal. 348, 32 Pac. 322; *State ex rel. Nenzel* v. *Second Judicial District Court*, 49 Nev. 145, 241 Pac. 317, 43 A. L. R. 1331.)

It is sometimes said that courts on account of rapidly changing conditions in this country are gradually relaxing this rule. (Clark on Receivers, sec. 187, subd. a.) The reason for the relaxation of this rule is the result of statutory enactments instead of the growth and change of judicial decisions.

The case of *Brunner* v. *York Bridge Co.*, 78 W. Va. 702, 90 S. E. 233, 1 A. L. R. 643, holds that a creditor of a corporation may make application for the appointment of an ancillary receiver. The opinion in the case considers the right of a creditor to secure the appointment of a receiver as being axiomatic. Under the provisions of section 2296 of the West Virginia Statutes of 1906, in force at the time the decision was promulgated, the right of general creditors of corporations to secure the appointment of a receiver is expressly granted. The case of *Popper* v. *Supreme Council, etc.*, 61 App. Div. 405, 70 N. Y. Supp. 637, is likewise based upon statutory authority for the appointment of receivers of both domestic and foreign corporations upon the application of a general creditor. An examination of the statutes of the various states reveals the fact that the legislatures thereof have from time to time increased the grounds for the appointment of receivers, and decisions from foreign jurisdictions must be read in the light of existing statutes.

Our own Code (secs. 9301 and 9303) enumerates the grounds for the appointment of receivers. Identical statutes obtain in California and Nevada. The California court, in the *French Bank Case*, supra, said: "But there is no statute of this state, none to which we have been pointed, which undertakes to confer upon a private person, either as stockholder or creditor, the right to maintain an action to dissolve a corporation upon the ground that it is insolvent, or to obtain relief by seizing its property out of the hands of its constituted management, and placing it in the hands of a receiver."

The petition of the respondent Mieyr does not reveal that he occupied any other status than that of a general creditor of the Federal Surety Company.

A receiver will not be appointed unless the applicant has no other plain, speedy or adequate remedy. (*Montana Ranches Co.* v. *Dolan,* 53 Mont. 397, 164 Pac. 306.) The cause of action which Mieyr had against the Federal Surety Company, as disclosed by his complaint, was upon an express contract for the direct payment of money, and he had ample means to secure the payment of his indebtedness by obtaining the issuance and levy of a writ of attachment. (*State ex rel. Nauman* v. *Pondera Valley State Bank,* 77 Mont. 1, 248 Pac. 207; *Jenkins* v. *First Nat. Bank,* 73 Mont. 110, 236 Pac. 1085; *State ex rel. Barnett* v. *Reynolds,* 68 Mont. 572, 220 Pac. 525.)

Mieyr had the right, at the time he attempted to secure the appointment of a receiver, to attach the property of the Federal Surety Company in the state of Montana, unless the appointment of a receiver in Iowa would prevent the exercise of that right.

Even though it be conceded that the appointment of the receiver in the state of Iowa operated to transfer the property of the defunct surety company to him, such involuntary assignment in aid of a statutory judicial proceeding will not be recognized outside of the jurisdiction of the appointment, where the rights of domestic creditors are involved, if the receiver has not obtained possession of the property and where the creditors have obtained rights or liens upon the property even after the appointment in the foreign jurisdiction.

In Pomeroy's Equitable Remedies, section 1674, page 3896 (4th ed.), it is said: "But where the receiver has not yet collected the fund or taken the property into his possession, and creditors or others have obtained rights or liens upon the property or fund in the state where it is situated, some distinctions must be observed. If the appointment of the receiver is involuntary, especially in aid of a statutory judicial proceeding, the prevailing doctrine seems to be that, where the rights of domestic creditors are involved, the assignment will not be recognized outside of the jurisdiction of appointment." The following authorities support the text quoted:

*Security Trust Co.* v. *Dodd, Mead & Co.,* 173 U. S. 624, 19 Sup. Ct. 545, 43 L. Ed. 835; *Cole* v. *Cunningham,* 133 U. S. 107, 129, 10 Sup. Ct. 269, 33 L. Ed. 538; *Catlin* v. *Wilcox Silver-Plate Co.,* 123 Ind. 477, 24 N. E. 250, 18 Am. St. Rep. 338, 8 L. R. A. 62; *Gray* v. *Covert,* 25 Ind. App. 561, 58 N. E. 731, 81 Am. St. Rep. 117; *Ward* v. *Connecticut Pipe Mfg. Co.,* 71 Conn. 345, 41 Atl. 1057, 71 Am. St. Rep. 207, 42 L. R. A. 706; *Gilbert* v. *Hewetson,* 79 Minn. 326, 82 N. W. 655, 79 Am. St. Rep. 486.

When the transfer of a debtor's property is the result of a judicial proceeding, there is no provision of the Constitution which requires the courts of another state to carry it into effect, and as a general rule no state court will do this to the prejudice of the citizens of its own state. (*Reynolds* v. *Adden,* 136 U. S. 348, 10 Sup. Ct. 843, 34 L. Ed. 360; *Zacher* v. *Fidelity Trust & Safety Vault Co.,* (C. C. A.) 106 Fed. 593.)

The petition of Mieyr for the appointment of a receiver was insufficient, in that he, being a general creditor, had no right to the appointment of a receiver and had an adequate remedy by which he could be fully protected; namely, the issuance and levy of a writ of attachment.

The property of the Federal Surety Company within the state of Montana at the time of the levy of the execution by Williard et al., not being in possession of the Iowa receiver, was subject to levy, and the levy made under the execution in May, 1932, is good and valid.

The judgment and orders appealed from are reversed and the cause remanded for further proceedings in the district court in accordance with the views herein expressed.

MR. JUSTICE ANGSTMAN, Dissenting: I am unable to concur in the views of my associates. The majority opinion concedes that the Iowa decree worked a present dissolution of the surety company. With this I agree, and shall discuss the remaining questions on that basis.

The majority opinion, so far as it holds that whether an action may be commenced or continued against a foreign cor-

poration after its dissolution by decree of the court of its domicile depends upon the laws of the state in which the action is pending, is in my opinion erroneous. I realize that there is *dictum* in some cases sustaining that view, and that a few cases so hold. The overwhelming weight of authority and the better-reasoned cases hold that whether a dissolved corporation is continued in existence for the purpose of maintaining or defending actions for a personal judgment must be determined by the laws of its domicile, and that laws of the forum continuing the life of a corporation will not be extended to a foreign corporation dissolved by the laws of its domicile. (8 Thompson on Corporations, sec. 6518, note 7; *Marion Phosphate Co.* v. *Perry,* (C. C. A.) 74 Fed. 425, 33 L. R. A. 252; *Kinsler* v. *Casualty Co. of America,* 103 Neb. 382, 172 N. W. 33; *Remington & Sons* v. *Samana Bay Co.,* 140 Mass. 494, 5 N. E. 292; *Fitts* v. *National Life Assn. of Hartford,* 130 Ala. 413, 30 So. 374; *Oklahoma Natural Gas Co.* v. *State of Oklahoma,* 273 U. S. 257, 47 Sup. Ct. 391, 71 L. Ed. 634; *Riddell* v. *Rochester German Ins. Co.,* 35 R. I. 45, 85 Atl. 273; *Hunt* v. *Columbian Ins. Co.,* 55 Me. 290, 92 Am. Dec. 592; *Matson* v. *Kennecott Mines Co.,* 101 Wash. 12, 171 Pac. 1040; *Harris-Woodbury Lumber Co.* v. *Coffin,* (C. C.) 179 Fed. 257, affirmed in (C. C. A.) 187 Fed. 1005;. *Robinson* v. *Mutual Reserve Life Ins. Co.,* (C. C.) 182 Fed. 850; *Martyne* v. *American Union Fire Ins. Co.,* 216 N. Y. 183, 110 N. E. 502; *Atlantic Dredging Co.* v. *Beard,* 145 App. Div. 342, 130 N. Y. Supp. 4; *Gulledge Bros. Lumber Co.* v. *Wenatchee Land Co.,* 115 Minn. 491, 132 N. W. 992.)

The laws of Iowa do not continue the life of a corporation dissolved by decree of court. (*State of Iowa* v. *Fidelity Loan & Trust Co.,* 113 Iowa, 439, 85 N. W. 638.) No personal judgment could be taken against the surety company after its dissolution. (*MacRae* v. *Kansas City Piano Co.,* 69 Kan. 457, 77 Pac. 94; *First Nat. Bank of Selma* v. *Colby,* 21 Wall. 609, 22 L. Ed. 687; *Combes* v. *Keyes,* 89 Wis. 297, 62 N. W. 89, 46 Am. St. Rep. 839, 27 L. R. A. 369; *Venable Bros.* v. *Southern Granite Co.,* 135 Ga. 508, 69 S. E. 822, 32 L. R. A.

(n. s.) 446; *Oklahoma Natural Gas Co.* v. *State of Oklahoma,* supra; *Morgan* v. *New York Nat. Bldg. & Loan Assn.,* 73 Conn. 151, 46 Atl. 877; *Crossman* v. *Vivienda Water Co.,* 150 Cal. 575, 89 Pac. 335; *United States Truck Co.* v. *Pennsylvania Surety Corp.,* 259 Mich. 422, 243 N. W. 311.)

When a corporation is dissolved according to the laws of its domicile, it becomes a dissolved corporation everywhere, dead in every other state as well as in the state of its domicile, and an action against such foreign corporation abates on its dissolution. (8 Thompson on Corporations, 3d ed., sec. 6518; 8 Fletcher, Cyc. Corporations, secs. 5810, 8582.) The decree of the Iowa court dissolving the surety company is entitled to full faith and credit in this state on that issue. (*Cogliano* v. *Ferguson,* 245 Mass. 364, 139 N. E. 527; *Morgan* v. *New York Nat. Bldg. & Loan Assn.,* supra; *United States Truck Co.* v. *Pennsylvania Surety Co.,* supra.)

While there is a diversity of views on the question, the better-reasoned cases hold that a judgment obtained against a corporation after its dissolution is void and subject to collateral attack. (*Crossman* v. *Vivienda Water Co.,* supra; *Newhall* v. *Western Zinc Min. Co.,* 164 Cal. 380, 128 Pac. 1040; *Panzer-Hamilton Co.* v. *Bray,* 96 Cal. App. 460, 274 Pac. 769; *Remington & Sons* v. *Samana Bay Co.,* supra; *Garrett* v. *Pilgrim Mines Co.,* 47 Idaho, 595, 277 Pac. 567; *Marion Phosphate Co.* v. *Perry,* supra; 8 Thompson on Corporations, 3d ed., sec. 6519; 8 Fletcher, Cyc. Corporations, sec. 5811; 7 R. C. L. 739.)

And, while there is authority to the contrary, the weight of authority supports the view that, "if a corporation is dissolved pending an action against it, the action abates by operation of law without any plea in abatement, so that no valid judgment can be rendered for or against it, and the objection can be raised at any time." (1 C. J. 135, and cases cited, including that of *Pendleton* v. *Russell,* 144 U. S. 640, 12 Sup. Ct. 743, 36 L. Ed. 574.)

Section 6013, Revised Codes 1921, is relied upon in the majority opinion. It provides, in part, that the dissolution

of any corporation does not "take away or impair any remedy given against any such corporation, its stockholders or officers, for any liability which has been previously incurred." Conceding, for the purpose of this discussion only, that the laws of Montana determine whether the action of appellants abated upon the dissolution of the company in Iowa, this section would be of no avail to them. Obviously it has application only to domestic corporations. It is only domestic corporations that may be dissolved by action taken under this and. the preceding sections.

Section 6659 is also relied upon. It provides that "all foreign corporations licensed to do business in the state of Montana shall be subject to all the liabilities, restrictions and duties which are or may be imposed upon corporations of like character organized under the laws of this state, and shall have no other or greater powers." Its provisions, like those of section 6212, have no application to a corporation that has ceased to exist. (*Robinson* v. *Mutual Reserve Life Ins. Co.,* (C. C.) 182 Fed. 850.) At most it is but a legislative declaration of the principle set forth in section 11 of Article XV of our Constitution. If section 6013 burdens a domestic corporation with life after its dissolution, the position of appellants in my opinion would not be affected by that fact. "The mere fact that a burden is placed upon domestic corporations from which foreign corporations are exempt does not operate to bring foreign corporations within the provisions of a law intended to apply solely to domestic corporations." (*Uihlein* v. *Caplice Commercial Co.,* 39 Mont. 327, 102 Pac. 564, 568.)

If there be merit in the claim that section 6013, when construed as applicable to domestic corporations only, has the effect of conferring greater rights and privileges upon foreign than upon domestic corporations, its utmost effect would be to condemn the statute as applied to domestic corporations, and this question could be raised only by a domestic corporation thus discriminated against. (*Uihlein* v. *Caplice Commercial Co.,* supra.) But the effect of construing section 6013 as applicable only to domestic corporations does not give foreign

corporations greater rights or privileges than domestic corporations. At most, it places creditors of a domestic corporation in a different position than creditors of a foreign corporation. Its provisions measure the rights and privileges of creditors, and not the corporation itself.

I fail to see, however, wherein it can be said that even domestic creditors of the surety company, because formed and dissolved under the laws of Iowa, are not enjoying the same rights and privileges as they would if the corporation had been created and dissolved under the laws of this state. Had it been created under the laws of Montana and here dissolved, the remedy preserved to a creditor by section 6013 and section 6659 would be nothing more than the right to proceed to judgment and have the judgment allowed as a claim in the receivership proceedings to share pro rata with other creditors. (8 Thompson on Corporations, sec. 6324, note 65; 53 C. J. 124; *Riehle* v. *Margolies*, 279 U. S. 218, 49 Sup. Ct. 310, 73 L. Ed. 669; *Martyne* v. *American Union Fire Ins. Co.*, 216 N. Y. 183, 110 N. E. 502.) That right is preserved to appellants here without the necessity of proceeding to judgment, and the dissolution in Iowa without continuance of the corporate life does not deprive them of any remedy which would be accorded to a creditor of a dissolved domestic corporation under like circumstances.

It is my opinion that the judgment of appellants is a nullity, and, in consequence, that no lien was obtained by virtue of the levy of execution. But, if the judgment of appellants be regarded as valid, I am still unable to subscribe to the conclusion announced in the majority opinion.

I think the court is in error in holding that an ancillary receiver may not be appointed at the instance of a general creditor. Our statute provides that a receiver may be appointed in an action "by a creditor to subject any property or fund to his claim, * * * where it is shown that the property or fund is in danger of being lost, removed, or materially injured." (Sec. 9301, Rev. Codes 1921.)

The complaint here is on behalf of all creditors, and charges that the foreign receiver is removing the assets, and that, unless a receiver be appointed, the funds would be dissipated and lost to the creditors.

We are here dealing with the appointment of an ancillary receiver in aid of the main receivership proceedings initiated in the Iowa courts. For the appointment of an ancillary receiver a creditor may make application. (53 C. J. 406; *Popper* v. *Supreme Council, etc.,* 61 App. Div. 405, 70 N. Y. Supp. 637; *Brunner* v. *York Bridge Co.,* 78 W. Va. 702, 90 S. E. 233, 1 A. L. R. 643; *Thornley* v. *J. C. Walsh Co.,* 200 Mass. 179, 86 N. E. 355.) ''The better practice is for one who has an absolute right to sue in a foreign jurisdiction, such as a party to the original suit, or a creditor or a stockholder, to bring suit there, and ask for the appointment of an ancillary receiver.'' (Clark on Receivers, sec. 318, subd. (a).) More particularly should this be the rule where, as here, the creditor, Mieyr, had confronting him the decree of the Iowa court adjudging that the corporation had been dissolved on September 21, 1931. This was sufficient basis upon which to justify the allegation made in his complaint that the property in this state was not subject to attachment or execution (dissolution has that effect, 8 Thompson on Corporations, sec. 6520), and to justify the court in assuming jurisdiction to appoint the ancillary receiver on his application.

Nor does the case of *Scholefield* v. *Merrill Mortuaries,* 93 Mont. 192, 17 Pac. (2d) 1081, 1084, militate against this view. In that case there had been no dissolution of the corporation, and no primary receiver appointed for the purpose of winding up the affairs of the corporation preliminary to dissolution. The primary receivership proceedings there involved did not look to the dissolution of the corporation, but had the effect of hindering and delaying creditors of a going concern. The proceedings in this state in that case were, as this court stated, ''purely a matter of the appointment of a receiver *pendente lite.*''

The fact that the assets had not yet come to the possession of the receiver when appellants made their levy, I think, is immaterial. The courts have the right to interfere summarily before property has passed to the possession of the receiver in order to aid the receiver in acquiring possession. (53 C. J. 116.) This is because the title of the receiver (8 Thompson on Corporations, sec. 6325) takes effect from the date of his appointment (Id., sec. 6326).

The trial court's function in a case of this kind was clearly expressed in *Sands* v. *E. S. Greeley & Co.*, 88 Fed. 130, 132, 133, 31 C. C. A. 426, where the court said: ''When the administration extends over assets located in several jurisdictions, it is often convenient to apply, in advance, for the assistance of the different courts; hence the practice has become common of applying for auxiliary or ancillary appointments. When such an application is made, the court to which it is addressed exercises its own original jurisdiction. The decree in the court of the domicile of the corporation is evidence in every other state that the corporation is insolvent, and that a proper case exists in that state for the appointment of a receiver, and it is to be respected accordingly, in obedience to the constitutional provision whereby full faith and credit is to be given in each state to the records and judicial proceedings of every other state in the Union. But it is for the court to which the application is made to decide what remedy it should extend in the particular case, and whether the proper administration of the assets requires the appointment of a receiver. Ordinarily, in comity to the proceeding of another court of coordinate jurisdiction, it will appoint an ancillary receiver, and assume administration in aid of the primary receiver. ([*National*] *Trust Co.* v. *Miller*, 33 N. J. Eq. 155.) When it appoints a receiver, the officer becomes its officer, and is completely amenable to its control, and it matters not whether he is called an ancillary receiver or merely a receiver. His title to the assets within the jurisdiction is derived from its decree, and does not depend upon comity. The assets are in its custody, and are to be disposed of as equity and the orderly

administration of justice require. Its judgments and decrees in respect to these assets must be accepted as conclusive by all other courts. 'Where a receiver, administrator, or other custodian of an estate is appointed by the courts of one state, the courts of that state reserve to themselves full and exclusive jurisdiction over the assets of the estate, within the limits of the state.' (*Reynolds* v. *Stockton,* 140 U. S. 254, 11 Sup. Ct. 773 [35 L. Ed. 464].) It rests in the discretion of the court appointing the receiver whether the assets within its jurisdiction shall be distributed under its own direction or shall be transmitted to the primary receiver. (*United States* v. *Coxe,* 18 How. 105 [15 L. Ed. 299].) It is eminently proper that claimants residing within its jurisdiction should be relieved from the expense and inconvenience of proving their claims in other jurisdictions, and that provision should be made for securing to them equality of distribution in respect to the whole assets of the corporation; but there is no hard and fast rule to control the discretion of the court in making such distribution of the assets as shall be just to all creditors, and ultimately effect a ratable distribution of all the property of the corporation. (*Buswell* v. *Supreme Sitting, etc.,* 161 Mass. 224, 36 N. E. 1065 [23 L. R. A. 846]; *Baldwin* v. *Hosmer,* 101 Mich. 119, 59 N. W. 432 [25 L. R. A. 739].) ''

Upon the appointment of the ancillary receiver, the property was brought in the custody of the court and was not subject to execution. (53 C. J. 131; 8 Thompson on Corporations, 3d ed., sec. 6324.) Nor does the fact that the court granted leave to make the levy alter the situation. That leave was granted only if Crichton's appointment should be revoked on appeal, and with the understanding that no preference over other creditors was given. The order granting leave was subsequently revoked.

The rule is that in the handling of the assets by the ancillary receiver ''preference will be given to domestic creditors in the court appointing the ancillary administrator if it appears that there is danger of discrimination against them in the forum of the original receivership, but only so far as is

necessary to counteract such discrimination. A court in which ancillary receivership is pending will protect the rights of the citizens of its own state and those of other states having claims which ought in equity to be brought under its own protection, and it may direct final distribution of the assets in its hands, but where there are no rights entitled to the particular protection of the ancillary court, it ordinarily will direct its receiver to turn over to the primary or domiciliary receiver the assets or funds in its hands after proper expenses of receivership have been taken out, and such turning over of funds rests ordinarily within the discretion of the ancillary court.'' (Clark on Receivers, sec. 321, and cases cited.)

Here the decree complained of makes ample provision to guarantee the local creditors freedom from discrimination as against the foreign creditors and assures the local creditors their ratable share of their claims with others of equal rank, as shown by the facts stated in the majority opinion, and that is all they are entitled to receive. (*Brunner* v. *York Bridge Co.*, 78 W. Va. 702, 90 S. E. 233, 1 A. L. R. 643.)

In my opinion, the judgment of the learned trial judge was correct, and should be affirmed.

Motion for rehearing argued by respective counsel on June 26, and denied on July 19, 1933; MR. CHIEF JUSTICE CALLAWAY and MR. JUSTICE ANGSTMAN dissenting.

Cause taken to the Supreme Court of the United States by respondents Surety Company and E. W. Clark, Receiver, September 11, 1933.